**Opinion issued March 14, 2019**



In The

# Court of Appeals

For The

## First District of Texas

_____

**NO. 01-18-00844-CV**

_____

## IN THE INTEREST OF J. G. S., A CHILD

---

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-52707**

---

### O P I N I O N

Paul Edward Cooper, Jr. appeals a judgment terminating his parental rights to his daughter, J.G.S. (pseudonymously referred to as Joanne). The termination proceeding was initiated by Cooper's mother, Rita Ann Sims, who has been Joanne's sole managing conservator for the past four years.

Sims filed her petition in 2016, seeking to terminate the parental rights of both of Joanne's parents—Cooper and Alicia M. Strong—and to adopt Joanne. The trial court terminated the parental rights of both parents and granted the adoption, which took place the day after the termination proceeding.

Cooper appeals the trial court's orders, arguing that there is insufficient evidence to support each predicate finding and the best-interest finding.[1] He further argues that the trial court erred in granting a trial amendment to add grounds for termination after the evidence closed, granting the adoption, and ordering him to pay attorney's fees for Sims and the amicus attorney.

Because there is factually insufficient evidence that termination of Cooper's parental rights was in Joanne's best interest, we reverse and remand.

## Background

Paul Edward Cooper, Jr. is the biological father of Joanne, who was born in 2008. Joanne's biological mother is Alicia M. Strong.

There is little information in the record about the first few years of Joanne's life. She lived with her mother in Virginia for some period of time. In 2011, Strong called Joanne's paternal grandmother, Rita Ann Sims, and asked Sims to come to Virginia to retrieve Joanne because she could no longer take care of the young girl.

---

[1] Strong is not a party to this appeal.

After that, Joanne lived at times with Sims and at other times with her father. The dates are unclear from the record.

In November 2012 Sims was named Joanne's sole managing conservator. The conservatorship order states that neither Cooper nor Strong appeared or participated in the hearing to determine conservatorship. Cooper and Strong were named possessory conservators and granted supervised visitation. They were ordered to pay child support and medical-reimbursement support. There are no fact findings or other materials in the record indicating the basis for these rulings.

Cooper is a Navy Reservist. The month after Sims was named Joanne's sole managing conservator, Cooper was "predeployed" by the Navy for six months, and then, in August 2013, was deployed to Guantanamo Bay, Cuba.

Just three months later, around November 2013, Cooper learned that another servicemember had made a sexual-assault allegation against him that the Navy was investigating. Charges were brought against Cooper in April 2014. A general court-martial proceeding followed and, in September 2014, Cooper was convicted of "three specifications of sexual assault and one specification of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920." He was convicted in September 2014. Cooper appealed his conviction through the military court system.

3

The record includes a "statement of confinement," dated September 30, 2015, from the Department of the Navy. It states that Cooper has been in confinement since his conviction and that his "current release date is 4 August 2019," which "is subject to change."[2]

In August 2016—while Cooper remained confined and his appeal was pending—his mother, Sims, sued to terminate Cooper's and Strong's parental rights and to adopt Joanne. Sims sought termination on the ground that Cooper and Strong voluntarily left Joanne in her possession for an extended period of time without providing adequate support. Sims did not cite to particular subsections of the termination statute, instead, relying on general allegations of absence and nonsupport. Within the same pleading, Sims petitioned to adopt Joanne.

Cooper filed a pro se answer. He informed the court that he was confined at the Naval Consolidated Brig in Miramar, California and that he "strongly desires to maintain his parent child relationship with his daughter and in no way wishes it is interfered with by his mother Rita Sims."

The trial court appointed an amicus attorney "to provide legal services to assist the Court in protecting" Joanne's interests. And the trial court entered an order for an evaluator selected by the Harris County Domestic Relations Office to

---

[2]    The letter further states that Cooper was confined in South Carolina from September 19, 2014, to April 18, 2015, and in California from April 18, 2015, through the date of the letter, September 30, 2015.

"prepare an evaluation to determine whether termination of [Cooper's and Strong's] parental rights is in the best interest" of Joanne and to "evaluate the circumstances and the condition of [Sims's] home and social environment." The results of these evaluations are not in the record.

In February 2018, Cooper moved for the trial judge to confer with Joanne in chambers to learn of Joanne's wishes as they related to the termination and adoption proceedings. His motion also requested that the interview be recorded and made part of the record. The record does not include any written order disposing of Cooper's motion. Nor is there any indication in the record that the trial judge met with Joanne.

Later that month, Sims amended her petition to add an additional ground for terminating Cooper's parental rights. She sought termination because Cooper has been "convicted by a Military Court-Martial" for the offenses of "unauthorized absence," "wrongful use of marijuana," and "sexual assault," had been sentenced to five years' confinement, and had his convictions affirmed by the United States Navy-Marine Corps Court of Criminal Appeals on May 26, 2016. Again, Sims did not specify any particular subsections of the termination statute.

Cooper then moved to stay the proceedings under the Servicemembers Civil Relief Act, 50 U.S.C. § 3932(b) (permitting trial court to grant 90-day stay in proceedings for servicemembers and for extended stays under certain conditions).

5

The trial court granted a 90-day stay, which stayed the proceedings until May 2018.

During the stay, in March 2018, a military appellate court reversed Cooper's court-martial, concluding that he was denied his statutory right to available counsel of his choice. The court also considered the legal and factual sufficiency of the evidence supporting the sexual-assault convictions. It described the government's case against Cooper as "not overwhelming" but, nonetheless, supported by legally and factually sufficient evidence. *See United States v. Cooper*, No. 201500039, 2018 WL 1178847, at \*16–17 (N-M. Ct. Crim. App. Mar. 7, 2018) (citing Uniform Code Military Justice art. 66(c), and *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002)), *rev'd*, *United States v. Cooper*, No. 18-0282, 2019 WL 629509, at \*1 (A.F. Ct. Crim. App. Feb. 12, 2019). The appellate court reversed the conviction, set aside the sentence, and remanded the case. Cooper remained confined at the Navy Brig in California as he awaited retrial.

The stay ended in May 2018, and the termination and adoption trial began that month. Cooper appeared by phone; his counsel was present at trial. Sims answered two questions on the record, then the trial court announced that trial would be recessed until a later date. All remaining testimony and evidence was presented about three months later, on September 8, 2018, which was approximately one year before Cooper's anticipated release date from confinement

by the Navy, even without a successful appeal. At the September 2018 trial, Cooper again participated by phone, while his attorney appeared in person.

Sims was asked about the circumstances under which Joanne originally came to live with her in 2011. Sims stated that Joanne had been living with her mother, Strong, in Virginia. Strong called Sims and asked Sims to take Joanne because Strong could no longer care for the young girl. Sims testified that she flew to Virginia and brought Joanne back to live with her. She stated that she gave Cooper the opportunity to "come and see" Joanne "but he chose to do other things." Sims was asked, "And did they express any intent to return?" Sims replied, "Not exactly." Sims explained that Strong had indicated that her situation might change in the future and that Cooper, for his part, "was doing his thing and [would] just come and drop by here and there to see" Joanne. According to Sims, neither parent "took any responsibility" for Joanne.

Sims testified that she was named sole managing conservator of Joanne in 2012 and that Cooper and Strong have seen Joanne only once since then, when they attended Joanne's baptism in 2014. According to Sims, neither parent has had any other in-person visit with Joanne since 2012.

Sims also testified that Strong never paid any child or medical support and that Cooper paid child support only for the first three months. Sims calculated that each parent separately owed her over $21,000 in past due payments. Sims testified

that she, alone, has paid for Joanne's food, clothing, shelter, and other needs since 2012. She agreed that she has been able to provide for Joanne "really rather well" and that Cooper had been aware that she would provide for Joanne financially.

Sims testified that Joanne should be eligible for insurance benefits as a dependent of a servicemember but that Cooper has not taken any steps to assist Sims in obtaining an insurance card to access those benefits for Joanne.

Sims testified that Cooper has talked infrequently to Joanne on the telephone during the past couple years while he has been incarcerated.

Sims testified that she thought it was in Joanne's best interest that Cooper's and Strong's parental rights be terminated, and she asked the trial court to do so. Specifically, Sims asked the trial court to terminate Cooper's parental rights because he was confined to military prison after engaging in criminal conduct and because he failed to support Joanne for the past five years. Sims also requested a money judgment against Cooper and Strong for unpaid support payments.

Sims was asked whether Joanne—who was nine years old at the time—was "knowledgeable that her father's rights will be forever terminated because of this" suit, and Sims agreed that Joanne was aware. Sims also was asked whether Joanne understood "that she may never see her father again" and whether Joanne was "fine with that." Sims indicated that Joanne understood and accepted that possibility.

Joanne did not testify. There is no indication in the record that the trial judge met with Joanne to determine her wishes regarding conservatorship. *Cf.* TEX. FAM. CODE §§ 153.009(a) (providing that, on party's motion, trial court shall interview in chambers child 12 years of age or older and may interview in chambers child under 12 years of age to determine child's wishes as to conservatorship or as to person who shall have exclusive right to determine child's primary residence), 153.009(c) (stating that interview does not diminish trial court's discretion to determine best interest of child). Nor is there any indication in the record of the results of the court-ordered evaluations to consider Joanne's best interests and evaluate Sims's home as an adoptive placement.

The next witness, B. Wade, testified that he has known Sims for over ten years. Wade testified that the interaction between Sims and Joanne is "great" and like "mom and daughter." Contrary to Sims's testimony, Wade stated that Strong had been at Sims's house several times in recent years. Wade stated that he had not seen Cooper there in four or five years. Wade testified that he believed termination of all parental rights was in Joanne's best interest.

After these two witnesses testified, Sims rested, and Cooper moved for a directed verdict, arguing insufficient evidence to support any predicate finding. Specifically, Cooper argued that Sims had offered no evidence that Cooper had failed to arrange for adequate support, even if he did not pay child support directly,

9

for termination under Section 161.001(b)(1)(C); no evidence that Cooper had an ability to pay support for termination under Section 161.001(b)(1)(F); and no evidence that Cooper had been convicted for termination under Section 161.001(b)(1)(Q). Cooper also argued that there had been no evidence that termination was in Joanne's best interest. The trial court denied his motion.

Cooper testified next. He described Joanne's placement with Sims while he was deployed as a "family care plan," but he did not explain what that term meant. Cooper testified that he loved Joanne, did not want her to be raised without a father, and believed that his mother would deny him any access to Joanne if his parental rights were terminated. He testified that he did not have a good relationship with his mother but wanted to be a good father to Joanne.

Cooper stated that he tried to maintain contact with Joanne while in confinement. He sent birthday cards and called her "on a very frequent basis." When money was added to his phone account, he called and spoke with Joanne. He sent her videos in which he read books to her. He also sent her letters and pictures.

Cooper testified that his mother changed her address and phone number in 2017, he was not given the new number and, as a result, was not able to reach Joanne for a time. His father later gave him the new number.[3] When he next spoke with Joanne, she told him that she had not been receiving his letters or pictures.

---

3    Sims testified that her home address and phone number did not change.

10

Cooper disputed Sims's testimony that he had only one in-person visit with Joanne since 2012. Cooper testified that he visited Joanne "multiple times" in 2012 before he was deployed and multiple additional times when on leave from his military duties at Guantanamo Bay. Cooper agreed that he has not seen Joanne in-person since his 2014 arrest and confinement.

Regarding his court-martial, Cooper testified that his conviction was overturned on appeal in March 2018. A copy of the March 2018 opinion of the United States Navy-Marine Corps Court of Criminal Appeals reversing his conviction is in the record. Cooper stated that he has remained incarcerated while he awaits retrial.

Cooper testified that the military suspended his pay in 2014, when he was arrested. His pay has been accumulating and, if he is successful in appealing his conviction, he will receive his full pay after acquittal. In the meantime, because he does not have any access to his accumulating military pay, he has had no income to forward to Sims for Joanne's benefit.

After the witnesses' testimony, the trial court announced its decision to terminate both parents' rights. At that point, Cooper stated that he needed to speak with his attorney. Following a short recess, evidence was reopened, and Cooper provided additional testimony by phone.

Cooper testified that, while in Guantanamo, he sent his mother money orders, he paid some bills directly, and he purchased some things over the internet for Joanne's use and benefit. He stated that those expenses were not allotments tracked through the military but were, instead, sent directly to Joanne. Cooper offered no documentary evidence to support his testimony.

Cooper addressed Sims's testimony regarding access to insurance for Joanne as a dependent of a military servicemember. Cooper testified that he had given Sims a military insurance card to use and had never been told that there were any issues or obstacles to Sims using that card for Joanne's benefit. Cooper testified that he was unaware that Joanne had not been using his military-provided insurance benefits.

Cooper testified that he was not critical of how Sims had been taking care of Joanne, but he loved Joanne, wanted her to be raised with him as her father, and feared that his mother would deny him any access to Joanne if his parental rights were terminated.

When Cooper's testimony ended, the trial court again announced its rendition of termination, specifying that Cooper's parental rights were terminated under Texas Family Code Section 161.001, Subsections (C), (F) and (Q).[4] At that point, the amicus attorney requested a trial amendment to include a claim for

---

[4] The trial court also terminated Strong's parental rights.

termination under Subsection (B). Cooper argued that the evidence had already closed and that it was "too late" for a trial amendment. The trial court replied that there had been clear and convincing evidence that Cooper voluntarily left Joanne, "expressed the intent not to return," and failed to provide adequate support for three months. Cooper did not specifically object to the trial amendment, and the trial court did not rule on any objection.

After terminating the parental rights of Cooper and Strong, the trial court granted Sims's adoption petition, finding that adoption was in Joanne's best interest. Although Cooper's attorney announced that he would appeal termination, the trial court scheduled the adoption for the following day, August 9, 2018.

The trial court issued an order terminating Cooper's parental rights and granting adoption on August 31, 2018. Cooper's parental rights were terminated under four statutory bases, three of which match the bases specified by the trial court when it first announced its decision—Sections 161.001(b)(1)(C), (F), and (Q)—and one of which matches a basis added by trial amendment after the first rendition—Section 161.001(b)(1)(B):

> 161.001(b)(1)(B)—voluntarily leaving child in possession of another without expressing an intent to return, without providing for the adequate support of the child, and remaining away for at least three months;
>
> 161.001(b)(1)(C)—voluntarily leaving child in possession of another without providing adequate support of the child and remaining away for at least six months;

161.001(b)(1)(F)—failing to support the child in accordance with the parent's ability during a year that ended within six months of the filing of the termination petition; and

161.001(b)(1)(Q)—knowingly engaging in criminal conduct that resulted in the parent's (1) conviction of an offense and (2) confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the termination petition.

*See* TEX. FAM. CODE § 161.001((b)(1)(B), (C), (F), (Q). The court further found that termination of Cooper's parental rights was in the best interest of Joanne.

Cooper appeals.

## Termination of Parental Rights

Cooper contends that the trial court erred in terminating his parental rights and challenges the court's findings under each of the four predicates: Section 161.001(b)(1)(B), (C), (F), (Q).

## A. Standard of review

A parent's rights to the "companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). A termination decree is final, irrevocable, and permanently divests the parent of all legal rights, privileges, duties, and powers with respect to the parent-child relationship, except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of

the parent. *Id.* However, the "rights of natural parents are not absolute" and the "rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Recognizing that parents may forfeit their parental rights by their acts or omissions, the primary focus of any termination suit is protection of the child's best interest. *See id.*

Due to the severity and permanency of the termination of parental rights, the evidence supporting termination must meet the threshold of clear and convincing evidence. TEX. FAM. CODE § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This is an intermediate standard that falls between "preponderance of the evidence" used in ordinary civil proceedings and "reasonable doubt" used in criminal proceedings. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

This heightened burden of proof results in a heightened standard of review. *In re S.R.*, 452 S.W.3d 351, 358 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). When the legal sufficiency of the evidence supporting termination is challenged, the reviewing court looks at all the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283

S.W.3d 336, 344 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d at 266. The court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. It should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. If, after conducting a legal sufficiency review of the record evidence, the court determines that no reasonable factfinder could have formed a firm belief or conviction that the matter to be proved was true, the court must conclude that the evidence on that matter is legally insufficient. *In re J.O.A.*, 283 S.W.3d at 344–45; *In re J.F.C.*, 96 S.W.3d at 266.

Only when the factual sufficiency of the evidence is challenged does the reviewing court review disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the

16

trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003). We should "explain in its opinion 'why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding.'" *In re J.O.A.*, 283 S.W.3d at 345.

A single predicate finding under Section 161.001(b)(1) of the Family Code is sufficient to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Thus, if multiple predicate grounds are found by the trial court, we may affirm on any one ground because only one is necessary for termination of parental rights. *See In re T.G.R.-M.*, 404 S.W.3d 7, 13 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

## B.    Predicate findings

As explained below, we conclude there is legally and factually sufficient evidence to support termination under one of the predicate findings. In this circumstance, we generally omit evaluation of the other predicates on which termination was based. *See id.* Due to unique aspects of this appeal, though, we have determined that it is appropriate to discuss all four predicates. We begin with Subsection (C).

**1. Subsection (C): Abandonment for at least six months**

Subsection (C) permits termination of parental rights on clear and convincing evidence that the parent "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months." TEX. FAM. CODE § 161.001(b)(1)(C). The "remained away" element requires clear and convincing evidence that the parent did not visit the child for six consecutive months. *Jordan v. Dossey*, 325 S.W.3d 700, 727 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Subsection (C) also requires that the six-consecutive-months period correspond to the event of voluntarily leaving the child with another. *See In re F.E.N.*, 542 S.W.3d 752, 763 (Tex. App.—Houston [14th Dist.] 2018, pet. filed). In other words, Subsection (C) is not satisfied by evidence that a parent once voluntarily left the child with another and then later, at another time, remained away for six consecutive months. *See id.*; *see also In re T.B.D.*, 223 S.W.3d 515, 518–19 (Tex. App.—Amarillo 2006, no pet.) (stating that, "in light of the entire record," there is "insufficient basis to support a firm belief or conviction that [father] . . . remained away from [child] for a period of six consecutive months.").

**a) Whether Cooper voluntarily left Joanne**

A divorce case, *In re J.K.H.*, No. 06-09-00035-CV, 2009 WL 2948575, at *3 (Tex. App.—Texarkana Sept. 16, 2009, no pet.) (mem. op.), is instructive on the

18

element of "voluntarily left the child." There, the father did not appear at trial, and the mother was granted a default judgment of divorce. *Id.* at *1. The mother was named sole managing conservator, and the father was named possessory conservator with a requirement that any periods of possession be supervised by the paternal grandmother. *Id.* The mother later moved to terminate the father's parental rights under Subsection (C). *Id.*

The Texarkana Court of Appeals held that the father did not voluntarily leave his children with another, to permit termination under Subsection (C), because the divorce decree named the mother sole managing conservator, permitted the father only supervised visits, and did not allow him possession otherwise. *Id.* at *3. The appellate court referred to the dictionary definition of "voluntary"—which is "proceeding from the will of one's own choice or consent," "unconstrained by interference: self-determining," and "done by design or intention"—and concluded that the father "did not voluntarily leave the children with the mother"; instead, "the court ordered him to do so." *Id.* (quoting *Voluntary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003)).

There was evidence that the father did not participate in the supervised visits allowed under the divorce decree; however, the *In re J.K.H.* court reasoned that voluntarily missing visits "is not the question" under Subsection (C). *Id.* Rather, the "question is whether he voluntarily left them in the possession of the mother."

*Id.* Because the divorce decree required him to leave the children with their mother, he cannot be said to have done so voluntarily. *Id.* There was legally insufficient evidence of this requirement in Subsection (C) to terminate the father's parental rights. *Id.*

Similarly, here, Sims obtained a court order in 2012 that named her Joanne's sole managing conservator and limited Cooper's role to a possessory conservator with supervised visits. Cooper did not participate in the hearing that resulted in the 2012 order, and there are no fact findings in the record to indicate the bases for the order or to indicate that Cooper was in any way agreeable to the arrangement. *Cf. In re H.S.*, No. 05-16-00950-CV, 2016 WL 7163864, at *5 & n.3 (Tex. App.—Dallas Dec. 6, 2016, no pet.) (mem. op.) (on evidence that father participated in conservatorship proceeding, did not oppose grandmother's request to be named managing conservator, and made no request that he be named managing conservator, appellate court concluded that evidence was legally and factually sufficient to support trial court's finding that father voluntarily left child in grandmother's possession).

There is legally insufficient evidence that Cooper "voluntarily left" Joanna in Sims's possession for any period after the date of the conservatorship order—November 2012—because the court's order required that Cooper leave Joanne with Sims and there is no evidence in the record that Cooper agreed to the

20

arrangement. *See In re J.K.H.*, 2009 WL 2948575 at *3; *see also* TEX. FAM. CODE § 161.001(b)(1)(C).

Thus, any event of Cooper voluntarily leaving Joanne with Sims and remaining away for six consecutive months had to pre-date the November 2012 conservatorship order.

### b) Whether Cooper "remained away" for six consecutive months

Sims had the burden to establish by clear and convincing evidence that Cooper remained away for six consecutive months during a period that he voluntarily left Joanne with Sims. *See In re F.E.N.*, 542 S.W.3d at 763; *In re J.K.H.*, 2009 WL 2948575, at *3; *see also In re T.B.D.*, 223 S.W.3d at 518–19. This required evidence that Cooper did not visit Joanne during the six-month period. *Jordan*, 325 S.W.3d at 727.

Sims did not establish this necessary time line. Sims testified that Joanne lived with Cooper during some undefined period before 2012. She also testified that, once Joanne began living with her in 2011, Cooper would "just come and drop by here and there to see" Joanne. Sims did not attempt to date these visits. And she failed to establish a six-month span between any two visits.

On this evidence, we conclude that Sims failed to meet her burden. There is legally insufficient evidence that Cooper "remained away" for six consecutive months before the entry of the 2012 conservatorship order. *See In re F.E.N.*, 542

21

S.W.3d at 763 (holding that Department of Family and Protective Services failed to meet its burden to establish that father's acknowledged visits were more than six months apart). Accordingly, there is legally insufficient evidence to support termination under Section 161.001(b)(1)(C).

## 2. Subsection (B): Abandonment for at least three months without expressing an intent to return

Subsection (B) permits termination of parental rights on clear and convincing evidence that the parent "voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months." TEX. FAM. CODE § 161.001(b)(1)(B).

Cooper argues that the trial court erred by allowing this basis for terminating his parental rights to be added by trial amendment after the close of evidence. We need not resolve that issue, however, because we conclude that Sims presented legally insufficient evidence to support termination on this ground.

Like with Subsection (C) above, Sims failed to present clear and convincing evidence that Cooper "remained away" for three consecutive months during a period in which he voluntarily left Joanne with Sims. *Cf. In re T.B.D.*, 223 S.W.3d at 518–19 (discussing "remained away" requirement in context of Subsection (C) and concluding that inconsistent evidence regarding dates of visits failed to meet standard of clear and convincing evidence that parent "remained away" from child

22

for statutorily prescribed period of months). Sims's own testimony indicates that Cooper came and went while Joanne was living with Sims before Cooper's deployment. Sims failed to establish a three-month period of absence.

There is legally insufficient evidence to support termination under Section 161.001(b)(1)(B).

### 3. Subsection (F): Failure to support child within ability for one year

Subsection (F) permits termination on clear and convincing evidence that a parent "failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition" for termination. TEX. FAM. CODE § 161.001(b)(1)(F). Under this provision, "one year" means 12 consecutive months. *See In re E.M.E.*, 234 S.W.3d 71, 72 (Tex. App.—El Paso 2007, no pet.). The party seeking to terminate has the burden to establish that the parent had the ability to support the child during each month in the 12-month period. *In re T.B.D.*, 223 S.W.3d at 518. Without evidence of an ability to support a child during the 12-month statutory period, termination of parental rights cannot be granted under Subsection (F). *Id.*

Importantly, here, the statute requires that the 12-month period must begin no earlier than 18 months before the date of the filing of the petition to terminate. *Yepma v. Stephens*, 779 S.W.2d 511, 512 (Tex. App.—Austin 1989, no writ); *Compasano v. State*, 576 S.W.2d 100, 102 (Tex. Civ. App.—Houston [1st Dist.]

1978, no writ); *see Holick*, 685 S.W.2d at 20 (stating that "involuntary termination statutes are strictly construed in favor of the parent").

Sims testified that she received support payments from Cooper for the first three months after the conservatorship order was entered—December 2012 to February 2013—but she received no additional support payments during the subsequent five years.

Sims filed her original petition for termination of parental rights in August 2016. Thus, any 12-month period of nonsupport despite an ability to support must begin no earlier than February 2015. TEX. FAM. CODE § 161.001(b)(1)(F); *Yepma*, 779 S.W.2d at 512.

Cooper's post-trial confinement began in September 2014. Cooper testified that the military has held his pay since the beginning of his confinement; therefore, he has had no access to income since September 2014. The evidence established that Cooper was incarcerated the entire period subject to Subsection (F) and had no access to his military pay during that time.

Sims, as movant, presented no evidence that Cooper had access to any other funds during the statutory period to establish an ability to pay. *Cf. In re N.G.G.*, No. 05-16-01084-CV, 2017 WL 655953, at *4–5 (Tex. App.—Dallas Feb. 17, 2017, pet. denied) (mem. op.) (although parent did not have employment or income during statutory period, movant presented documentary evidence of

24

parent's six-figure investment account balances and spending habits during statutory period to establish ability to pay). Accordingly, she failed to meet her evidentiary burden to obtain termination under Subsection (F). *See In re T.B.D.*, 223 S.W.3d at 518 & n.2 (evidence did not support termination under Subsection (F) because no evidence incarcerated parent had ability to pay); *In re E.M.E.*, 234 S.W.3d at 74 (same).

There is legally insufficient evidence to support termination under Section 161.001(b)(1)(F).

### 4. Subsection (Q): Criminal conviction and confinement without provision of care for child

Subsection (Q) permits termination of parental rights on clear and convincing evidence that a parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE § 161.001(b)(1)(Q).

Subsection (Q) "fills a gap" in the bases for termination by allowing a prospective analysis of the anticipated care of a child while the parent is incarcerated and an opportunity for intervention to avoid neglect of a child during a prolonged incarceration. *See In re A.V.*, 113 S.W.3d at 360; *In re D.J.H.*, 381 S.W.3d 606, 612 (Tex. App.—San Antonio 2012, no pet.). The provision exists not to mete out additional punishment on parents for their criminal conduct, but to

25

"ensure that the child will not be neglected" while his or her parent is away in prison. *In re A.V.*, 113 S.W.3d at 360; *see In re A.R.*, 497 S.W.3d 500, 503 (Tex. App.—Texarkana 2015, no pet.). The primary focus of Subsection (Q)—like Section 161.001 generally—is the protection of the child's best interests. *Id.*

The requirement of clear and convincing evidence of an "inability to care for the child" is not met on the mere showing of prolonged incarceration. *In re D.J.H.*, 381 S.W.3d at 611 n.3; *Brazoria Cty. Children's Protective Servs. v. Frederick*, 176 S.W.3d 277, 279 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see In re Caballero*, 53 S.W.3d 391, 395 (Tex. App.—Amarillo 2001, pet. denied). "Otherwise, the termination of parental rights could become an additional punishment automatically imposed along with imprisonment for almost any crime." *In re E.S.S.*, 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.); *see Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.T.*, 34 S.W.3d 625, 636 (Tex. App.—Fort Worth 2000, pet. denied). Therefore, evidence of a two-year incarceration is only the first of a three-step analysis. *In re E.A.R.*, No. 13-08-00101-CV, 2009 WL 2625314, at *4 (Tex. App.—Corpus Christi Aug. 27, 2009, no pet.) (mem. op.).

During the first step, the party moving for termination must produce evidence of criminal conduct by the parent that results in confinement for two or more years. *Id.* The burden of production then shifts to the parent. *Id.*

In the second step, the parent must produce some evidence of how the parent will provide care for the child during the period of confinement[5] or that the parent has arranged with another person for that person to provide care for the child during the period of confinement. *Id.*; *Caballero*, 53 S.W.3d at 396.

If the parent seeks to meet the burden of production with evidence that another person will care for the child during the period of confinement, the parent must prove the proposed caregiver's agreement to provide the care. *In re E.S.S.*, 131 S.W.3d at 640 ("Appellant met his burden of production regarding how he would arrange for the care of E.S.S. in that the agreement reached by the parties included naming Appellant's mother and brother possessory conservators with visitation rights.").

The Texas Supreme Court has held that a parent relying on another's provision of care to avoid termination under Subsection (Q) must demonstrate that

---

[5] "The incarcerated parent's willingness and ability to provide financial and emotional support are factors to be considered in determining if the parent is unable to care for the child." *In re T.A.D.*, No. 14-16-00717-CV, 2017 WL 924550, at *3 (Tex. App.—Houston [14th Dist.] Mar. 7, 2017, no pet.) (mem. op.); *see Frederick*, 176 S.W.3d at 279 (stating that "the availability of financial and emotional support from the incarcerated parent" is relevant to parent's ability to care for child).

the care is being provided on behalf of the parent, not out of an existing duty or inclination to care for the child. *In re H.R.M.*, 209 S.W.3d at 105; *see In re D.L.A.*, No. 04-18-00182-CV, 2018 WL 4412506, at *9 (Tex. App.—San Antonio Sept. 18, 2018, pet. denied) (mem. op.) ("The care must be offered by a person who agrees 'to assume the incarcerated parent's obligation to care for the child' during the incarceration."); *see also In re I.G.*, No. 13-18-00114-CV, 2018 WL 3062581, at *4 (Tex. App.—Corpus Christi June 21, 2018, no pet.) (holding that grandparents' care as part of "working relationship" with incarcerated father met father's burden); *In re E.A.R.*, 2009 WL 2625314, at *5 (stating that provision of care on parent's behalf is some evidence supporting preservation of parent-child relationship) (citing *W.B. v. Tex. Dep't of Protective & Regulatory Servs.*, 82 S.W.3d 739, 742–43 (Tex. App.—Corpus Christi 2002, no pet.), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d at 267 n.39.). An incarcerated parent cannot meet his burden merely by producing evidence that there is an unincarcerated parent or grandparent who is willing and able to care for the child; instead, the parent must present evidence that the alternative caregiver is providing care on behalf of the parent. *In re H.R.M.*, 209 S.W.3d at 105; *see In re D.Z.R.-M.*, No. 14-13-01084-CV, 2014 WL 1390289, at *9 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.) (holding that evidence of aunt's care did not meet father's burden because aunt's care was "on her own behalf, rather than agreeing to

assume the Father's obligation to care for the Child while the Father is incarcerated," and alternatively holding that, even if father met burden, Department met its subsequent burden)

If the parent's burden of production is met, the third step shifts the burden to the party seeking to terminate parental rights. *In re S.R.*, No. 13-15-00114-CV, 2015 WL 3657747, at *2 (Tex. App.—Amarillo June 11, 2015, no pet.) (mem. op.). That party then has the burden of persuasion to show by clear and convincing evidence that the parent's provision or arrangement would not adequately satisfy the parent's duty to the child. *Id.*; *In re D.J.H.*, 381 S.W.3d at 611 n.3.

Sims had the initial burden to show that Cooper has been confined for more than two years since the date she petitioned to terminate his parental rights. Under his court-martial, Cooper was ordered to be confined for five years. His anticipated release date is August 2019. Sims petitioned to terminate Cooper's parental rights in August 2016. Cooper still had more than two years of confinement remaining.

Cooper's first challenge to termination under Subsection (Q) is based on the evidence that his conviction has been reversed by a military appellate court. He argues that, in light of that evidence, Sims did not meet her initial burden to establish a "conviction" for termination of his parental rights under Subsection (Q).

The term *conviction* is not defined in the parental-termination statute. Black's Law Dictionary defines the term as follows:

1. The act or process of judicially finding someone guilty of a crime; the state of having been proved guilty.
2. The judgment (as by a jury verdict) that a person is guilty of a crime.

*Conviction*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Here, Cooper was convicted of various sexual assault charges and court-martialed. He appealed his conviction. The appellate court reversed his conviction because he was denied the right of military servicemembers to select his attorney. However, the appellate court also held that there was legally and factually sufficient evidence to support Cooper's conviction. The appellate court reversed the conviction but indicated that a retrial will follow. Cooper remained confined.

The parties do not point us to any caselaw analyzing whether a conviction that was based on legally and factually sufficient evidence but was nonetheless reversed for retrial meets the requirements of a "conviction" under Subsection (Q). Nor have we found any such case.

What we have found, instead, is a collection of cases analyzing whether a conviction that is not yet final satisfies Subsection (Q). In those cases, courts have repeatedly reasoned that the focus of termination under Subsection (Q) is not whether a conviction is final or will be affirmed on appeal but, rather, whether there is a period of two or more years in which the parent will be confined following a conviction, thereby raising the possibility of inadequate parental care. *See, e.g.*, *In re A.V.*, 113 S.W.3d at 360–61. With that focus in mind, courts have

30

permitted termination of parental rights while an appeal of the parent's conviction remains pending. *See, e.g.*, *In re L.B.*, No. 05-13-01615-CV, 2014 WL 1102050, at *7–8 (Tex. App.—Dallas Mar. 20, 2014, no pet.) (mem. op.); *In re W.B.W.*, No. 11–11–00269–CV, 2012 WL 2856067, at *14 (Tex. App.—Eastland July 12, 2012, pet. denied) (mem. op.); *In re T.C.C.H.*, No. 07-11-00179-CV, 2011 WL 6757409, at *9 (Tex. App.—Amarillo Dec. 22, 2011, no pet.) (mem. op.); *see also In re D.N.*, No. 07-15-00041-CV, 2015 WL 2255954, at *5 (Tex. App.—Amarillo May 13, 2015, no pet.) (mem. op.) (stating that "finality of a conviction is not required to support termination under paragraph (Q)").

The reversal of Cooper's conviction did not result in his release from confinement. He still is confined in a military jail as his case progresses. He has been confined for more than two years since Sims filed the petition to terminate in August 2016. Thus, we conclude that Sims met her initial burden of establishing a two-year period of confinement following a conviction.[6]

Because Sims met her initial burden, the burden shifted to Cooper to produce some evidence of his ability to care for Joanne during his period of confinement or an agreement from another to provide care on his behalf. *See In re*

---

[6] We are not presented with, and therefore do not decide, whether a conviction that is reversed with a judgment of acquittal would satisfy the requirement of a *conviction* under Subsection (Q). *Cf. Holick*, 685 S.W.2d at 20 (stating that "involuntary termination statutes are strictly construed in favor of the parent").

*R.N.W.*, No. 01-13-00036-CV, 2013 WL 3467206, at \*3 (Tex. App.—Houston [1st Dist.] July 5, 2013, no pet.). Cooper argues he met this burden with evidence that his mother, Sims, is caring for Joanne.

Sims petitioned to be Joanne's sole managing conservator. She sought and was awarded conservatorship rights and duties, including "the duty of care, control, protection" and "support" of Joanne. Thus, Cooper is correct in the sense that Sims has "agreed" to care for Joanne. But, cases interpreting Subsection (Q) have held that merely identifying an alternate caretaker for a child is insufficient to meet the parent's burden; instead, to meet his burden, Cooper must establish that Sims is caring for Joanne *on behalf of* Cooper, not out of her own, personal obligations to the child. *See In re H.R.M.*, 209 S.W.3d at 110–11.

Sims is the petitioner in the termination proceeding. Her actions are not in support of Cooper's efforts to parent Joanne but, rather, in opposition to his continuing status as her legal parent. *See id.* at 110 (evidence that mother cared for child "does not show that she agreed to care for [child] *on his behalf,* particularly where, as here, she is seeking to terminate his rights"). There is no evidence Sims is caring for Joanne on behalf of—or for the benefit of—Cooper. *See id.* at 110–11. Thus, Cooper's evidence of Sims's continuing care for Joanne is not evidence in support of his burden of production. Because Cooper has not met his burden to produce evidence of an ability to care for Joanne or an agreement of another

32

person to care for Joanne on his behalf, we must conclude that the trial court did not err in concluding that the elements for termination of Cooper's parental rights under Subsection (Q) have been met.[7]

We conclude that there is legally and factually sufficient evidence to support the trial court's predicate finding under Subsection (Q). Because at least one predicate has been affirmed, we turn next to the best-interest analysis.

## C. Best interest of the child

### 1. Applicable law

In addition to a predicate violation, the party seeking to terminate another's parental rights must establish by clear and convincing evidence that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(2); *see id.* § 153.002 ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."). There is a strong presumption that the child's best interest will be served by preserving the parent-child relationship. *In re J.F.C.*, 96 S.W.3d at 294. Because of the strong presumption that maintaining the parent-child relationship is in the child's best interest and the due process implications of terminating a parent's rights without clear and convincing evidence that termination is in the child's best interest, "the best interest standard does not permit termination merely

---

[7]     *See* Concurring Opinion.

because a child might be better off living elsewhere. Termination should not be used to merely reallocate children to better and more prosperous parents." *In re W.C.*, 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.) (citation omitted); *see In re E.N.C.*, 384 S.W.3d 796, 809 (Tex. 2012).

A factfinder may consider a number of factors to determine the child's best interest, including the child's desires, the child's present and future physical and emotional needs, the present and future emotional and physical danger to the child, the parental abilities of the people seeking custody, programs available to assist those people in promoting the child's best interest, plans for the child by those people or by the agency seeking custody, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Evidence establishing one of the predicates under Section 161.001(b)(1) also may be relevant to determining the best interests of the child. *In Interest of S.C.F.*, 522 S.W.3d 693, 701 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The absence of evidence about some of the factors would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Likewise, a lack of evidence on one factor cannot be used as if it were clear and convincing evidence supporting a termination finding. *In re E.N.C.*, 384 S.W.3d at 808.

In some cases, undisputed evidence of only one factor may be sufficient to support a finding that termination is in the child's best interest; in other cases, there could be "more complex facts in which paltry evidence relevant to each consideration mentioned in *Holley* would not suffice" to support termination. *In re C.H.*, 89 S.W.3d at 27. Our "best interest" analysis is not limited to these *Holley* factors; other factors may be considered. *Holley*, 544 S.W.2d 372.

### 2.      The trial court's best-interest finding

Cooper moved for a directed verdict after Sims submitted her evidence, arguing that there was legally insufficient evidence of any predicate for termination and legally insufficient evidence that termination of his parental rights was in Joanne's best interest. The trial court summarily denied the motion.

At the conclusion of the termination hearing, the trial court announced its rendition of termination without making a finding that clear and convincing evidence existed to support a conclusion that termination was in Joanne's best interest. Later, however, the trial court issued a written order terminating Cooper's parental rights, which included the following finding:

<u>Best Interests of Child</u>

7.      The Court finds clear and convincing evidence that it is in the best interest of the child for the parent-child relationship between [Strong] and [Cooper] and [Joanne] to be terminated.

A similarly worded finding appears a second time in the order. Neither finding is accompanied by factual findings or other explanations why termination would

35

better meet Joanne's best interest. Cooper filed a written request for findings of fact and conclusions of law. The trial court did not issue any.

In sum, the trial court made a finding that clear and convincing evidence supports its conclusion that terminating Cooper's parental rights was in Joanne's best interest, but the trial court did not provide findings of fact or conclusions of law to explain the court's reasoning in reaching this determination. We therefore have no guidance on the trial court's evaluation of the evidence in light of specific *Holley* factors or how one factor may have predominated in the analysis, if at all.

**D.** **Whether the predicate finding under Subsection (Q) supports the best-interest finding**

We have reviewed all predicate findings and concluded that there is legally insufficient evidence to support three of the four. The fourth predicate finding was established with adequate evidence but, as discussed more fully in the concurrence, that result turned on Sims's characterization of her care of Joanne as being in furtherance of her own relationship with Joanne versus on behalf of Cooper. That singular difference allowed for a predicate finding under Subsection (Q), which then mandated review of the best-interest finding.

We reach the best-interest analysis on a Subsection (Q) finding that includes no evidence of possible future child neglect or possible lack of care. All parties agree that Sims is capable of caring for Joanne and is willing to do so. Subsection (Q) was met, nonetheless, because Cooper cannot show that Sims's care of Joanne

36

is specifically on his behalf, rather than for her own reasons as a grandmother. She is willing to provide for all Joanne's needs, but she is not doing it to help Cooper. Indeed, the testimony indicated that the relationship between Cooper and Sims had broken down to the point that they no longer speak. In terms of Joanne's best interest, based on the record before this Court, it is not clear that the distinction between Sims providing care on her own behalf or on behalf of her son matters. *Cf. In re A.V.*, 113 S.W.3d at 361 (stating that primary focus of Subsection (Q)—like Section 161.001 generally—is protection of child's best interests).

Generally, predicate findings can support a separate finding that termination is in the child's best interest. *See In re A.M.*, 495 S.W.3d at 581. We cannot agree that a Subsection (Q) finding resting on the slender reed of the caregiver's motive also supports a determination that termination is in the child's best interest. A more detailed analysis is necessary. Yet, as discussed below, this record is quite limited on facts relevant to the best-interest analysis.

In this context, in which a grandparent seeks to terminate parental rights and become the parent, the question becomes whether Joanne's interests are best served by (a) continuing to have a familial relationship with Sims in the form of a granddaughter-grandmother relationship under a sole managing conservatorship and continuing to have a parental relationship with Cooper that is limited to phone calls and the possibility of future supervised visits or (b) altering the familial

relationship with Sims to that of a daughter-mother while severing completely Joanne's parental relationship with Cooper. Regardless of the outcome of this termination proceeding, Sims is and can be expected to continue to be a devoted caregiver. She enjoys a familial relationship with Joanne either way. It is Sims's burden to establish that termination of Cooper's parental rights is in Joanne's best interest—that termination best serves Joanne's interests over non-termination.

## E.    Evidence is factually insufficient to support best-interest finding

Our analysis of the best-interest determination is guided by the *Holley* factors. *See* 544 S.W.2d at 370.

### 1.    Child's desires

Cooper moved for the trial court to interview Joanne in chambers to determine Joanne's wishes. There is no indication in the record that the trial court ruled on his motion. Nor is there any indication that such an interview occurred. Despite Cooper's effort to have Joanne's wishes relayed directly to the trial court, it appears they were not.

Sims testified that Joanne—who was nine at the time of the termination hearing—was aware that Cooper's parental rights might be terminated and that she may never see him again. Sims testified that Joanne was "fine with that." Sims is a party to this litigation who has a direct interest in its outcome. She is the only

38

witness to provide evidence on Joanne's wishes. It was within the trial court's discretion to credit her testimony. *See In re H.R.M.*, 209 S.W.3d at 109.

## 2. Parenting abilities of people seeking custody

Sims has been Joanne's primary caregiver for the past several years. Wade testified that Sims and Joanne have a "great" relationship that is like a "mom and daughter." Cooper testified that he believes his mother has done a "good job" of caring for Joanne.

There was little evidence of Cooper's parental abilities. The record indicates that Cooper and Joanne lived together in an apartment for a period before 2012, though it is unclear if he was the sole parental figure in her life at that time. Cooper and Joanne lived with Sims during a different, pre-2012 period as well. There is no evidence of the level of care Cooper and Sims provided relative to each other during that period.

Cooper testified that he wants to be a father to Joanne and does not want his rights terminated. He testified that he has made efforts to fulfill his role as a parent, despite his long-distance separation, by sending Joanne letters, videos, and cards, and by phoning her frequently. But Cooper's evidence does not establish a history of sustained parenting. It is unclear from this record the degree to which Cooper is able to parent Joanne long-term.

But also relevant is the degree of access Cooper enjoyed under the conservatorship order. Since 2012, Cooper has been a possessory conservator with the right to supervised visits. He did not have the right to determine Joanne's place of residence, to live with her, to make decisions regarding invasive medical procedures, or other areas commonly considered within parental rights and duties. *See* TEX. FAM. CODE §§ 153.075 (rights of parent at all times), 153.074 (rights and duties during period of possession), 153.132 (rights and duties of parent appointed sole managing conservator). That Cooper had limited visitation should not be held against him in the best-interest analysis. *See, e.g., In re B.C.S.*, 479 S.W.3d 918, 927–28 (Tex. App.—El Paso 2015, no pet.); *Harris v. Texas Dep't of Family & Protective Servs.*, 228 S.W.3d 819, 829 (Tex. App.—Austin 2007, no pet.) (finding best interest of child was served by allowing father to raise him despite paucity of evidence about best interest due in part to denial of visitation).

All parties agree there is limited contact between Joanne and her father, Cooper. All parties further agree that the 2012 order limits Cooper to supervised in-person visits with Joanne. And Sims established that Cooper has had very limited involvement in Joanne's life since his incarceration. But, even if he does not prevail on his appeal, Cooper is scheduled for release from military prison in a matter of months. Even if his level of involvement does not drastically increase after release, Sims offered no explanation why continuing with the limited contact

that has existed is against Joanne's best interest. There is no evidence that Cooper has discussed inappropriate or harmful subjects with Joanne in their phone calls. Nor is there any evidence that Joanne is negatively affected by contact with Cooper in a possessory conservator role with supervised visits.

3. **Parent's acts or omissions that may indicate that the parent-child relationship is not a proper one and any excuse for those acts or omissions**

Sims testified that Cooper never registered for supervised visits with Joanne after the 2012 order was implemented. Relatedly, she asserts that Cooper saw Joanne only once after the conservatorship order issued. She argues that his lack of visits supports termination.

Cooper was in the military at least as early as 2012. He was predeployed and then deployed to Cuba in 2012 or 2013. At least after deployment, Cooper was not physically in Texas to attend supervised visits. He testified that he visited Joanne while on leave, sent her items, and called her. Sims disputed his claims.

Sims points to Cooper's absence as evidence to support termination. We cannot agree that mere absence, when in connection with military service, supports termination. Cooper left the country shortly after the 2012 order in support of his commitment to military service. His absence during military service should not undercut his efforts to maintain a parental relationship with his child. *See In re D.S.A.*, 113 S.W.3d 567, 574 (Tex. App.—Amarillo 2003, no pet.) (noting that

incarcerated parents may present evidence of arrangements for others to care for their children and stating that, otherwise, an implication would exist that "military personnel cannot provide for their children because they may be assigned overseas to combat duty.").

Once deployed, Cooper faced charges of sexual assault and was court-martialed. An appellate decision has issued that included a determination that legally and factually sufficient evidence support his conviction. The evidence that Cooper committed sexual assault, which has been found to be legally and factually sufficient to support his conviction, is some indication that the parent-child relationship between Cooper and Sims is not appropriate. *See In re G.M.G.*, 444 S.W.3d 46, 60 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (considering father's conviction for offense of sexual assault in best-interest analysis).

### 4. Available programs for conservators to promote best interest of child

Sims's testimony indicates that she would not need the assistance of programs to provide care for Joanne. The degree to which Cooper would require program assistance is unclear given the status of his court-martial appeal. With an acquittal, Cooper would receive all his backpay and retain his military benefits. These funds would be available to support Joanne. If, however, his conviction ultimately stands, he will not receive back pay and likely would require assistance, at least in the short-term, to establish stable housing close enough to Joanne to

allow supervised visits and employment to meet his financial-support obligations. There was no testimony or other evidence regarding the existence or availability of programs to assist Cooper if such assistance became necessary.

### 5. Parties' plans for the child

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in a child's best interest. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A child's need for permanence, with the establishment of a "stable, permanent home," has been recognized as the paramount consideration in a best-interest determination. *Id.*; *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Stability and permanence are paramount in the upbringing of children.").

Sims testified that Joanne attends private school and is involved in out-of-school activities, including piano, swimming, basketball, track, dance, and school and church choir. Beyond the testimony about Joanne's current interests and activities, Sims did not discuss plans for Joanne's future.

While Sims and Wade testified that termination was in Joanne's best interest, neither elaborated why they reached that conclusion. Sims testified that she has a history of caring for Joanne and financially supporting her, but Sims

offered no testimony about Joanne's emotional state or needs or about Sims's future plans for Joanne.

Cooper's testimony on this issue was focused on his desire that Joanne be allowed to maintain a relationship with him in the future and his belief that Sims would sever all contact between Cooper and Joanne if Cooper's parental rights were terminated.

### 6. Child's present and future physical and emotional needs and danger

Sims testified that she provides for Joanne's physical needs without any assistance from Cooper. Sims and Cooper disputed the level of contact Cooper maintains with Joanne. There was no evidence regarding the degree to which Joanne perceives Cooper as a parent or a source of emotional support. There was no discussion by any witness about Joanne's future emotional needs.

During Sims's testimony, she made a single reference that "my son did jump me before." The date of this incident was not given, and no further explanation was provided. Without some context for the statement, we are unable to determine whether the incident is some indication that Cooper would present a danger to Joanne. We will not speculate on the import of this single statement provided without context. *See Flanz v. Farias*, 662 S.W.2d 685, 688 (Tex. App.—Houston [14th Dist.] 1983, no writ) (concluding that single statement without context provides insufficient evidence to support finding).

44

Cooper's projected release date is August 2019, even if his appeal results in an affirmance of his conviction. That date is five months from the date of this opinion. Cooper testified that he wants to continue his father-daughter relationship with Joanne after his release. Sims did not explain why doing so would be against Joanne's best interest.

## 7. Other considerations particular to this appeal

Typically, efforts to terminate a parent's rights under Subsection (Q) are brought by the State in anticipation of a child's possible neglect while the parent serves a lengthy prison sentence. *See, e.g.*, *In re A.V.*, 113 S.W.3d at 357; *In re D.J.H.*, 381 S.W.3d at 612. There is no concern over possible future neglect here. Sims is Joanne's grandmother. Sims has shown a sustained interest in providing for Joanne. Sims sought and was granted the legal right and duty to care for Joanne in the form of a sole managing conservatorship in 2012. Since then she has been Joanne's primary caregiver. There is evidence Sims has a good relationship with her granddaughter. But there is also evidence that Joanne has a relationship with her father.

When termination is sought under Subsection (Q) by a family member, the parent must present some evidence of the parent's ability to care for the child during the period of incarceration or an agreement with another individual to provide care on the parent's behalf. *In re H.R.M.*, 209 S.W.3d at 105, 110. Proof

45

only that another person will care for the child is inadequate—there must be some evidence that the care is on the parent's behalf. *Id.* at 110 (stating that "merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care"). But, as discussed, the impact this distinction has on the best interest of the child is not clear. The child is equally cared for whether or not that care is on behalf of the parent.

Here, Sims offered no argument or evidence to indicate that her care of Joanne uncoupled with an agreement with Cooper supports termination of Cooper's parental rights. In fact, her brief does not contain a section that even discusses Joanne's best interest.

Our focus is whether termination of Cooper's parental rights would advance Joanne's best interest. *See* TEX. FAM. CODE § 161.001(b)(2); *see id.* § 153.002. Under the facts of this case, the issue is whether there would be addition by subtraction.

All evidence indicates that Joanne will retain a familial relationship with Sims regardless of whether Cooper's parental rights are terminated. Sims first sought and obtained a court order giving her the rights and duties of a sole managing conservator. Sims then sought court approval to alter that familial relationship to that of an adoptive mother-daughter. To do so required the termination of her son's parental rights to Joanne. But in our view, on this record,

46

the disputed evidence cannot support a rational factfinder's firm conviction or belief that the loss of Cooper's parental relationship adds to Joanne's best interest.

Sims and her supporting witness testified that termination was in Joanne's best interest, but neither explained the basis for their opinion. The trial court found that termination was in Joanne's best interest but did not issue findings of fact or conclusions of law explaining the basis for the finding. Cooper appealed the sufficiency of the evidence on best interest, and Sims filed a brief that fails to directly address the legal and factual arguments related to best interest.

The 2012 order granted Cooper possessory conservatorship over Joanne, with the right to supervised visits only. Cooper testified that he is committed to maintaining a parent-child relationship with Joanne under those terms. There is undisputed evidence Cooper calls Joanne in support of maintaining that relationship. He has not been able to visit due to his confinement in California, but he is scheduled for release in a matter of months. Perhaps Cooper, if allowed, would take advantage of supervised visits with Joanne in the future. Perhaps he would not. But Sims has not offered clear and convincing evidence that termination at this time is in Joanne's best interest without affording Joanne and Cooper the opportunity to further develop their parent-child bond.

Sims's testimony reveals a frustration over Cooper's failure to provide financial support for Joanne's benefit. But mere non-payment, standing alone, is

not a basis for termination of parental rights under Section 161.001(b). TEX. FAM. CODE § 161.001(b) (listing 21 predicates for terminating parental rights, none of which are satisfied with singular showing of non-payment of support); *cf. id.* § 153.001 ("A court may not render an order that conditions the right of a conservator to possession or of access to a child on the payment of child support."); *Clark v. Dearen*, 715 S.W.2d 364, 367 (Tex. App.—Houston [1st Dist.] 1986, no writ) (stating that "the harsh and irrevocable remedy of termination of the parent-child relationship is not justified where the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice").

There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *Jordan*, 325 S.W.3d at 730; *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Parental rights are of constitutional magnitude, but they are not absolute. *See In re C.H.*, 89 S.W.3d at 26. "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Jordan*, 325 S.W.3d at 729 (citing *In re C.H.*, 89 S.W.3d at 26).

Sims has presented no evidence that Joanne's emotional and physical interests would be sacrificed if Cooper's parental rights as possessory conservator with supervised visits were preserved. This case does not involve a challenge to Sims's sole-managing-conservator role. Joanne will continue to live with Sims. Cooper is not seeking more rights; he seeks to maintain the judicially limited rights he already possessed. He seeks to maintain the legally recognized, familial relationship he has had with Joanne and to prevent his mother from excluding him from Joanne's life. Sims made no showing of why life without Cooper was better than life with him, even in a limited role with infrequent contact.

**8.      Conclusion based on consideration of evidence and *Holley* factors**

We have given due consideration to the evidence that the factfinder could have credited in support of its finding that termination of Cooper's parental rights was in Joanne's best interest. We recognize that the factfinder reasonably could have determined that Sims has provided a stable home for Joanne and that there is minimal evidence in the record of past, sustained periods of parenting by Cooper. Nonetheless, weighing all the evidence and considering all the *Holley* factors, giving due consideration to the disputed and undisputed evidence presented at the termination hearing, giving deference to the trial court's role as factfinder and judge of witness credibility, and taking into account the timeline of events, we conclude that the undisputed and disputed evidence that a reasonable factfinder

49

could not have credited in favor of the best-interest finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction that termination of Cooper's parental rights was in Joanne's best interest. *See In re A.C.*, 560 S.W.3d at 630; *In re J.F.C.*, 96 S.W.3d at 266; *see also In re C.T.E.*, 95 S.W.3d 462, 469 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (concluding evidence was factually insufficient to support best-interest finding); *In re K.C.M.*, 4 S.W.3d 392, 399 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (same).

We conclude there is legally sufficient evidence to support the trial court's ruling on best interest but factually insufficient evidence that termination of Cooper's parental rights is in Joanne's best interest. We sustain Cooper's tenth issue and therefore reverse the judgment terminating Cooper's parental rights. As such, the order of adoption is likewise reversed. Because the trial court's judgment is reversed, Cooper's issues on attorney's fees are moot.

## Conclusion

We conclude that there is (1) legally insufficient evidence of the predicate findings against Cooper under Subsections (B), (C), and (F); (2) legally and factually sufficient evidence of the Subsection (Q) predicate finding; (3) legally sufficient evidence that termination of Cooper's parental rights is in Joanne's best interest; but (4) factually insufficient evidence that termination is in Joanne's best interest. Accordingly, we reverse the trial court's order terminating Cooper's

50

parental rights for factually insufficient evidence on best interest. We remand that portion of the suit for additional proceedings consistent with this opinion.


                                        Sarah Beth Landau
                                        Justice

Panel consists of Justices Keyes, Higley, and Landau.

Justice Landau, concurring.

Justice Keyes, dissenting.