

# Fourth Court of Appeals
## San Antonio, Texas

## DISSENTING OPINION

No. 04-19-00326-CV

**IN THE INTEREST OF T.H.J.**, C.H.J., J.H.J., and P.H.J., Children

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00096
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
            Rebeca C. Martinez, Justice
            Liza A. Rodriguez, Justice

Delivered and Filed: January 2, 2020

Because I would hold the Department failed to present legally sufficient evidence to support the finding that termination of P.J.'s parental rights is in the children's best interest, I respectfully dissent.

## BACKGROUND

On January 17, 2018, the Texas Department of Family and Protective Services filed a petition to terminate the parental rights of M.J. and P.J. to their children T.H.J., C.H.J., J.H.J., and P.H.J.  P.J., the father, was incarcerated at the time.  Trial commenced on May 2, 2019.  The trial court admitted two exhibits, each containing certified copies of various court documents.  Exhibit

2 pertained to M.J. and 2015 charges brought against her for injury to a child, A.B., her daughter.[1]

Exhibit 1 reflects P.J. was indicted in 2013 with the felony offense of injury to a child, also A.B., by "pushing" and "stepping on the hand of the child." The judgment, dated April 24, 2014, recites the court placed P.J. on ten years' probation and includes a family violence finding. Conditions of his probation included attending a parenting class, keeping gainful employment, supporting his dependents, and remaining in Bexar County. Two years later, P.J. pled true to committing the March 10, 2016 offense of assault alleged in the State's motion to revoke. The court revoked his probation and reformed his sentence to four years in prison, with credit for time served. P.J. has been incarcerated since April 12, 2016. His expected release date was February 2020. The Department presented no additional facts surrounding the circumstances of the underlying offense for which P.J. was incarcerated. The only additional facts presented regarding the assault offense was the following: (1) P.J. testified the complainant was M.J., and (2) the Department had previous custody of the children on the date of the assault, March 10, 2016.

The Department presented testimonial evidence from four witnesses. First, the Department's legal worker Lilian Gibson testified the children were removed in December after M.J. arrived "highly intoxicated" to pick up two of her children at the elementary school they attended.[2] At the time of the trial, the children were eight, seven, six, and four and had been living at Legacy Ranch for four months. Gibson testified the children had been in the custody of the Department cumulatively for three years, including "a previous case" but provided no other information regarding P.J.'s history with the Department. Gibson stated the children's basic,

---

[1] A.B. is M.J.'s daughter and a "relative" of a child in this case. The record does not further describe A.B.'s relationship to the children or to P.J. The record reflects the children were removed after July 2015 but had been returned to M.J. sometime between the last hearing before trial and the trial date.

[2] Exhibit 2 contains the State's motion to revoke alleging M.J. committed the offense of DUI on February 13, 2018; an amended motion to revoke alleged M.J. committed an additional offense of DUI on May 23, 2018 and left the state without the court's consent. The offenses were committed in Florida.

educational, and counseling needs were being met at Legacy Ranch. When asked how the children were doing, Gibson responded: "They're holding up. However, there is some regression occurring." Gibson was not asked to elaborate on the children's well-being and did not otherwise provide facts pertaining to the children, their well-being, or their placement before January 2019, four months before trial.

Based on letters received from P.J., Gibson surmised that P.J. may have received the initial service plan sometime in March 2018, although this was disputed by P.J. According to Gibson, a caseworker named Olivia Coates visited P.J. six weeks before trial, on April 15, 2019, "in Beeville at Garza Unit West." During the pendency of the case, Gibson had not visited P.J. and was unaware if anyone else had in the 16 months before trial. Gibson did not know why P.J. was incarcerated but stated he "supposedly" would be in custody until February 2020. According to Gibson, P.J. was offered services while incarcerated but was aware only that he had completed an 18-hour Raindrops to Rainbows Parenting Program. Gibson testified P.J. had no contact with his children due to his incarceration and would not be able to provide a safe and stable home environment for the children "today" because he was still incarcerated "at this time." The Department offered no further evidence reflecting efforts towards reunification. Gibson acknowledged that P.J. told Coates he had completed the parenting program and would attempt to complete other services while in custody. P.J. later testified uncontroverted that he had completed the Attitudes and Behaviors Class and was at the time of trial enrolled in a Christians Against Substance Abuse class and Parenting Matters class. Gibson admitted P.J. had written letters to the previous caseworker, but Gibson had seen only one. Gibson testified that in the letter she reviewed P.J. expressed an interest in continuing to care for his children but acknowledged that, while in

custody, he could not pay child support or obtain employment. P.J. was not able to visit his children but, had he asked, the Department "could have worked that out somehow."

Regarding permanency plans, Gibson testified no one at Legacy Ranch would adopt the children but that the Department would "reach out to a previous foster home that w[as] interested in them" and which "wanted the mother's rights terminated first." The Department offered no further evidence of past or active efforts towards reunification or establishing permanency for the children. The record reflects the trial court acknowledged the lack of permanency for the children.

Next, the Department presented testimony from Penny Drenin, a caseworker with Indian Child Welfare.[3] Drenin indicated that no licensed homes within the Choctaw Nation in Oklahoma were open for placement and offered nothing more than conclusory testimony regarding best interest.

The Department solicited the following from P.J.: he was in custody for a 2013 charge for injury to a child, a child not involved in this case; he had been denied parole three times; was up for parole review in June with a possible release in October; and his expected release date was February 24, 2020. On cross examination by the children's ad litem, P.J. testified he had been in custody before the instant case was filed, had not communicated with Gibson or the removal caseworker, and no one had replied to his communications. He stated: "I've written numerous letters asking for a service plan, which I didn't receive until the 15th." According to P.J., at the time of trial, he had been enrolled in Christians Against Substance Abuse for five weeks and had informed his caseworker. Further, according to P.J., he had employment opportunities awaiting him upon release, and he named three specifically. P.J. testified:

> I can provide for my children. I've done nothing but provide for my children when
> I was not incarcerated. And I wasn't out of their lives all of their lives in

---

[3] Drenin testified, "As long as a diligent search is done for relatives and [a] Native American home, I feel that good cause could be—(inaudible)—for the Department to deviate from ICWA placement preferences."

incarceration either.  The first five years of their life, I was married to my wife.[4]
My daughter was born in 2010.  So, you know, it doesn't make sense.

P.J. testified that he sought to do services by mail and to continue his services upon his release in an effort to obtain custody or partial custody of his children.  He wrote letters to the Choctaw Nation after they intervened in the case because "CPS—you know, they were leaving me in the dark."  He testified that he had not been able to visit with his children and was never told that he could have made arrangements while in custody; instead, he was told he could write cards.  According to P.J., he sent birthday cards and placed the children on his visitation list.  He stated he tried to get someone to intervene, including an older brother in New Mexico, and tried to maintain the bond he has with his children.  P.J. asked the court for an extension to allow him to complete his services and to prove to CPS and the court that he was a fit father, noting that, if he was granted parole after his next review, he would be released in October 2019.

The children's ad litem asked P.J. to elaborate on the circumstances leading to his arrest for injury to a child.  P.J. testified that he had been placed on one-year probation for the misdemeanor offense and was told by the district court judge she would drop the felony injury to a child if he could successfully complete the one-year probation.  He committed a technical violation[5] of his probation, leaving him to face the felony charge and ten-year suspended sentence.  As to the assault charge referenced in the State's motion to revoke, P.J. referred to the offense as "family household assault strangulation."  According to P.J., prior to his incarceration in 2016, he had provided for his children and was never homeless.

Pete Guerra, a CASA volunteer, testified he was involved in the "original case, since July 2014."  Guerra recalled P.J. did not show up at most hearings, was not involved in services, and,

---

[4] The record contains no evidence of the date of P.J.'s marriage or its dissolution.
[5] P.J. testified, "I went to—(inaudible)—to pick my wife and kids up.  That violated my probation."  A condition imposed on his probation was to remain within Bexar County, Texas.

over a hearsay objection, stated that P.J.'s ex-wife M.J. claimed he was homeless at the time. The record contains no additional evidence pertaining to P.J.'s history with CPS. The Department did not offer evidence pertaining to a required service plan, if any, related to the referenced "original case in 2014" or P.J.'s previous history with the Department. The record does reflect P.J. was required, as a condition of his probation in 2013, to complete a parenting class under Bexar County Community Supervision, which P.J. testified he had completed. Lastly, Guerra expressed concerns of "the history of violence." Guerra elaborated: "The kids are in therapy. They always complain about they're really afraid and fearful. It's [C.H.J.] and her therapy sessions. Says she's afraid of that her dad is . . . that he's going to come and get her." Like Gibson, Guerra also reported the kids were "regressing," claiming their level of care has increased and they were having disciplinary issues. The Department offered no additional evidence regarding the subject children, A.B., or any alleged actions or failures by P.J. as they relate to his parental ability or to the children's well-being in the past, present, or future. The trial court then terminated P.J.'s rights to his children.

## STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a-1); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The standard of clear and convincing evidence "is an intermediate standard that falls between 'preponderance of the evidence' used in ordinary civil proceedings and 'reasonable doubt' used in criminal proceedings." *In re J. G. S.*, 574 S.W.3d 101, 114 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam)). Termination proceedings are carefully scrutinized, and "involuntary termination statutes are strictly construed

in favor of the parent." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012).

The clear-and-convincing standard renders the typical standards of review for legal and factual sufficiency challenges inadequate. *See In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex. 2002). To assess legal sufficiency of the evidence, we look at "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. To give appropriate deference, "a reviewing court must assume that the factfinder resolved disputed facts in favor of its findings if a reasonable factfinder could do so." *Id.* A reviewing court should disregard "all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* A reviewing court considers "evidence favorable to termination if a reasonable factfinder could," and disregards "contrary evidence unless a reasonable factfinder could not." *In re D.M.*, 452 S.W.3d 462, 469 (Tex. App.—San Antonio 2014, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573–74 (Tex. 2005) (per curiam)). Evidence is legally insufficient if the reviewing court determines "no reasonable factfinder could form a belief or conviction that the matter that must be proven is true." *In re J.F.C.*, 96 S.W.3d at 266.

In determining factual sufficiency, we give deference to the factfinder's findings, but also consider and weigh the disputed and contrary evidence. *In re D.M.*, 452 S.W.3d at 469; *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). In other words, we give "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In considering whether the evidence rises to the level of being "clear and

convincing," we must determine whether the evidence is sufficient for the fact finder to reasonably form a firm belief or conviction as to the truth of the allegation sought to be established. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. In conducting a factual sufficiency review, we cannot substitute our judgment for that of the factfinder. *In re D.M.*, 452 S.W.3d at 469 (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

**DISCUSSION**

In this case, the trial court found clear and convincing evidence of the following four predicate grounds under subsection 161.001(b)(1) to terminate P.J.'s parental rights: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical and emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; (3) constructively abandoned the children; and (4) knowingly engaged in criminal conduct that resulted in P.J.'s conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of the filing of the petition. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (N), (Q). The trial court also found clear and convincing evidence that terminating P.J.'s parental rights was in the children's best interest. On appeal, P.J. contests only the trial court's best interest finding.

*Best Interest Standard*

There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that

"the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a parent is willing and able to provide his or her child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See id.* § 263.307(b). In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

<u>Analysis</u>

On appeal, the State argues P.J.'s incarceration is evidence supporting the trial court's best interest finding. It points out that P.J. has had no contact with his children during his incarceration and has never asked for his children to visit him, thus evidencing a lack of parental ability affecting the emotional and physical needs of the children.

"[C]riminal conduct and incarceration affect[] a parent's life and the ability to parent, thereby subjecting a child to potential emotional and physical danger." *In re S.A.M.*, No. 04-18-00607-CV, 2019 WL 573469, at *5 (Tex. App.—San Antonio Feb. 13, 2019, pet. denied) (mem. op.). Additionally, "[a] parent's incarceration is relevant to his ability to meet the child's present and future physical and emotional needs." *In re J.G.S.*, 550 S.W.3d 698, 706 (Tex. App.—El Paso 2018, no pet.). "[A] parent's incarceration at the time of trial makes the child's future uncertain." *Id.* However, "the Family Code may not constitutionally be interpreted to authorize termination based solely on the fact that a parent is incarcerated." *In re A.L.R.*, No. 04-19-00349-CV, 2019 WL 5765793, at *6 (Tex. App.—San Antonio Nov. 6, 2019, no pet. h.) (mem. op.) (citing *In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012)). Any inferences a factfinder may reasonably draw from past criminal conduct to form a belief regarding a lack of parental ability affecting the emotional or physical well-being of a child must be supported by clear and convincing evidence. *See In re C.H.*, 89 S.W.3d at 28; *In re E.D.*, 419 S.W.3d at 622.

Here, the State's arguments and evidence at trial are tied largely to P.J.'s past criminal conduct and incarceration. The State argues its burden is met largely by the evidence of P.J.'s four-year sentence for the offense of bodily injury to a child and P.J.'s admission of true to the allegation of assault in the State's motion to revoke. According to the State, this evidence "potentially" demonstrates he is not a safe person for the children to be around. Based solely on P.J.'s criminal conduct and incarceration, the trial court may have suspected P.J. had or would subject the children to potential emotional and physical danger and, consequently hamper the Department's opportunity to find permanent placement. Further, the State points to the trial court's possible conjecture that termination of P.J.'s parental rights would improve the Department's chances to find a foster or adoptive home.

Speculation and inference stacking do not amount to clear and convincing evidence. *See Gunn v. McCoy*, 554 S.W.3d 645, 662 (Tex. 2018) (explaining testimony offered with no basis to support it is "merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection"); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) (per curiam) ("[A]n inference stacked only on other inferences is not legally sufficient evidence."). The only evidence pertaining to P.J.'s criminal conduct is the admitted criminal court records and P.J.'s reference to the assault charge as "family household assault strangulation" against his ex-wife M.J., which occurred while the children were in the custody of the Department. The Department offered no additional facts pertaining to either offense to support even a reasonable inference that the particular conduct and incarceration is indicia of P.J.'s danger to his children or an inability to meet his children's physical or emotional needs in the past, present, and future. The only other evidence adduced suggesting that P.J. poses a danger to the emotional and physical well-being of his children is vague testimony by Guerra that C.H.J. expressed a fear of her father, yet the timing was unclear.

Witness testimony that P.J. could not provide a safe and stable home for the children at the time of trial due to his incarceration, without evidence to substantiate those opinions, amounts to conclusory evidence with no probative force and does not weigh in favor of termination. *See Gunn*, 554 S.W.3d at 662; *Marathon Corp.*, 106 S.W.3d at 728; *see also In re A.L.H.*, 468 S.W.3d 738, 747 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Unsupported, conclusory opinions of a witness do not constitute evidence of probative force."). I disagree with the majority's analysis to the extent it suggests that any evidence of past criminal conduct and incarceration is not just relevant but sufficient to prove a parent is unable to meet the children's future physical and emotional needs. While a trial court may "believe" that past criminal conduct and incarceration is

evidence of parental ability, such belief must be substantiated by clear and convincing proof and not speculation. Certainly, even if the trial court believed P.J. "minimized" having stepped on the hand of A.B., the Department offered no evidence to support an implied finding by the trial court that P.J. posed a danger to his own children at the time of trial or in the future. The Department presented no evidence pertaining to P.J.'s past or future employment, lack of plans for the children, or his ability or inability to obtain or maintain housing or otherwise meet the children's emotional or physical needs when he is released. *Cf. In re A.L.R.*, 2019 WL 5765793, at *5–8 (determining the Department failed to establish the best-interest prong for termination where the record contained no evidence regarding a parent's past employment, prospective future employment, earning capacity, and where he intended to live when released from prison, and where there was no evidence that the parent did not attempt to meet the child's needs while in prison, that his proposed placement was unsuitable, or that the parent would be unable to meet the child's emotional and physical needs when released). The only competent evidence regarding the children's current placement showed that Legacy Ranch was meeting their basic needs, but both Gibson and Guerra testified the children were "regressing."

The State argues that a lack of permanency plans or evidence of a child's desires does not mean that termination is improper or based on insufficient evidence. It also argues that P.J.'s desire "to reunify with and provide for his children alone is not sufficient enough to prevent termination on best interest, despite any bond that may exist." However, in shifting the focus to arguments against termination, the Department misapplies the standard of review and burden of proof. *See In re E.N.C.*, 384 S.W.3d at 808. The majority appears to concede as the State does as to the lack of evidence regarding permanency in this record. The Department bore the burden to establish by clear and convincing evidence that termination of P.J.'s parental rights is in the best

interest of the children.  TEX. FAM. CODE ANN. §§ 161.001, 161.206(a-1); *In re A.V.*, 113 S.W.3d

at 362.  On this record, the Department has not carried its burden.

## CONCLUSION

Based on this record, I would hold the evidence is legally insufficient and amounts to no

more than a scintilla, and certainly less than clear and convincing evidence, from which no

reasonable fact finder could form a firm belief or conviction that termination of P.J.'s parental

rights is in the children's best interest.  I would therefore reverse the part of the trial court's order

that terminated P.J.'s parental rights, render judgment denying the request for termination, and

remand the case to the trial court for further proceedings.  *See* TEX. FAM. CODE ANN. § 161.205.

Rebeca C. Martinez, Justice