

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00394-CV

---

## IN THE INTEREST OF H.P., III, A MINOR CHILD

---

On Appeal from the 100th District Court
Childress County, Texas
Trial Court No. 10,964, Honorable Stuart Messer, Presiding

---

May 1, 2020

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

In this accelerated appeal, appellant, Father, seeks reversal of the trial court's judgment terminating his parental rights to H.P.[1]  In two issues, Father asserts that the evidence is insufficient to support the trial court's predicate findings and the finding that termination is in the best interest of H.P.  Finding no error, we affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we refer to the child by initials and to the parents of the child as "Mother" and "Father."  See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).

## Background

Father and Mother were living together when H.P. was born in September of 2015. When H.P. was approximately three months old, Father was incarcerated for an aggravated assault that he committed before H.P. was born. Father is serving a fourteen-year sentence and he is not eligible for parole until October of 2022.

Before his incarceration, Father had daily interaction with H.P. Father sang songs to H.P., changed H.P.'s diapers, and made his bottles. During this time, Father worked at odd jobs and he gave the money he made to Mother. According to Father, he paid the bills, such as the car insurance, rent, and the light bill. He also bought diapers and baby formula.

After Father was transferred to the prison in Abilene, Mother and H.P. visited Father every other weekend until H.P. was eighteen months old. Father sent Christmas cards, drawings, and birthday cards to H.P. until Mother asked him to stop contacting her. Father arranged for H.P. to receive Christmas gifts through the Angel Tree Foundation. Father has a niece who babysits H.P. free of charge on Father's behalf. Father said, "They actually bought [H.P.] a baby crib and little toys and stuff like that, clothes, all on my behalf." Since his incarceration, Father has not sent any money for H.P.'s support. The last telephone contact Father had with H.P. was a year before trial.

Father is assigned to the trustee dormitory and he has not had any major or minor disciplinary actions. Since his incarceration, he has received a certification from the Occupational Safety and Health Administration and completed a ninety-hour course for certification through the National Center for Construction Education and Research. He is

currently enrolled in a welding course and he plans to obtain his certification as a certified electrician. Upon his release from prison, Father plans to parole to a halfway house and seek employment.

Mother disputes the contact Father had with H.P. after his birth, explaining that "[Father] was gone more than he was there." When Father was transferred to the prison in Abilene, Mother took H.P. to visit with Father every other month. Father telephoned Mother regularly, but his calls were not always about the welfare of H.P. According to Mother, the last contact that Father had with H.P. was before H.P.'s first birthday.

As far as paying the bills when Father and Mother were together, Mother had her family's support because she was not working at the time. Mother is currently employed at Walmart and she has sufficient income to take care of herself and H.P.

Mother testified that termination of Father's parental rights was in the best interest of H.P. because Father told her that "whenever he gets out, he does not want a job. That he was going to go back to his old lifestyle, and that I could not keep his son from him, and that he will come take my son, and there's nothing I can do about it."

In January of 2019, Mother filed a petition to adjudicate parentage and terminate Father's parental rights.[2]

The trial court terminated Father's parental rights on the grounds he abandoned the child without providing adequate support, failed to support the child in accordance

---

[2] Mother's petition also requested that she be appointed H.P.'s managing conservator and that the court grant a name change and injunctive relief. Father filed a pro se answer and requested parentage testing and a court-appointed attorney. In May, Mother filed a first amended petition requesting retroactive child support and for Father to pay her attorney fees along with the genetic testing fees.

3

with his ability, and engaged in criminal conduct that led to his conviction, imprisonment, and inability to care for the child. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(B), (F), and (Q) (West Supp. 2018).[3] The trial court also found that termination was in the best interest of H.P. *See* § 161.001(b)(2). The trial court appointed Mother as the managing conservator and granted injunctive relief and a name change.[4]

## Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

[4] Parentage was not contested at the final hearing. Father does not appeal the provisions of the court's order appointing Mother the managing conservator, granting injunctive relief, and granting a name change for the child.

committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is

generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, as long as those determinations are not themselves unreasonable. *Id.*

Standard of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

6

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Analysis

Termination under § 161.001(b)(1)(Q)

In his first issue, Father challenges the legal and factual sufficiency of the evidence to support the termination of his parental rights under section 161.001(b)(1)(B), (F), and (Q). Only one statutory ground is required to support termination when there is also a finding that termination is in the child's best interest. *In re A.V.,* 113 S.W.3d at 362. Therefore, we will limit our analysis of the sufficiency of the evidence in support of subsection (Q).

Under subsection 161.001(b)(1)(Q), a parent's rights can be terminated when a parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition." Subsection Q applies prospectively in anticipation of a parent's abandonment of the child and not just

7

in response to it. *In re A.V.,* 113 S.W.3d at 360. "[S]ubsection Q purports to protect children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin." *Id.* at 360-61. This provision is not an additional punishment for a parent's criminal conduct, but it is to "ensure that the child will not be neglected" while the parent is incarcerated. *In re. A.V.,* 113 S.W.3d at 360. Proof that the parent is unable to care for the child is an additional requirement that is not met by showing incarceration alone. *In re H.R.M.,* 209 S.W.3d 105, 110 (Tex. 2006) (per curiam) ("Terminating parental rights under subsection Q requires that the parent be both incarcerated or confined *and* unable to care for the child for at least two years from the date the termination petition is filed.").

We employ a burden-shifting analysis to assess an incarcerated parent's ability to care for a child. *In re J.G.S.,* 574 S.W.3d 101, 118-19 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). The party seeking termination must first establish that the parent will remain in confinement for the requisite period. *In re B.D.A.,* 546 S.W.3d 346, 358 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). The burden then shifts to the parent to produce "some evidence" as to how he would provide or arrange to provide care for the child during his incarceration. *Id.* at 358. "Cases discussing the incarcerated parent's provision of support through other people contemplate that the support will come from the incarcerated parent's family or someone who has agreed to assume the incarcerated parent's obligation to care for the child." *In re H.R.M.,* 209 S.W.3d at 110.

When the incarcerated parent meets that burden of production, the person seeking termination then has the burden of persuasion to show by clear and convincing evidence

that the parent's provision or arrangement would not satisfy the parent's duty to the child. *In re Caballero*, 53 S.W.3d 391, 395 (Tex. App.—Amarillo 2001, pet. denied).

In this case, Father does not dispute that he knowingly engaged in criminal conduct resulting in his incarceration for at least two years from the date of the filing of the petition. He argues instead that the evidence was insufficient to show that he was unable to care for H.P. Specifically, Father contends that he established he was able to care for H.P. because "he has a niece that babysits [H.P.] on his behalf without charging [Mother] anything," his family bought a crib, toys, and clothes for H.P., and he provided Christmas gifts through the Angel Tree Foundation. While these arrangements are beneficial to H.P., the evidence does not demonstrate an ability to provide consistent care for H.P. or fulfill Father's responsibility to care for H.P. while he was incarcerated. Importantly, Father does not claim that his niece had agreed to assume Father's obligation to care for H.P. on his behalf—only that she agreed to serve as a babysitter.[5] *In re H.R.M.,* 209 S.W.3d at 110. We cannot say that the provision of temporary care, such as babysitting, fulfills a parental responsibility to care for a child.

In light of the entire record, and giving deference to the proper role of the factfinder, we find this testimony was not so significant as to preclude the trial court from reasonably forming a firm conviction that Father, individually or through family surrogates, was unable during his incarceration to care for H.P. The trial court could have reached a firm conviction that the requirements of section 161.001(b)(1)(Q) were met, making the evidence legally and factually sufficient. In light of our conclusion regarding the trial

---

[5] We note that Father's niece and family members did not testify. *See In re Caballero*, 53 S.W.3d at 396 (incarcerated parent's testimony that family members could care for the child did not render the evidence factually insufficient to support a finding of inability to provide care).

court's finding on subsection (Q), we need not address the findings under subsections (B) or (F).   *In re A.V.,* 113 S.W.3d at 362.   We overrule Father's first issue.

Best interest of the child

In issue two, Father challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under section 161.001(b)(2).   A determination of best interest necessitates a focus on the child, not the parent.   *See In re B.C.S.,* 479 S.W.3d at 927.   Appellate courts examine the entire record to decide what is in the best interest of the child.   *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013).   There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).   These factors include:  (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent.   *Id.*   "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'"   *In re C.T.E.,*

95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

At the time of trial, H.P. was four years old and he was too young to express his desires. The trial court was free to consider whether the child was adequately cared for and whether the child had spent minimal time with Father. *In re J.D.,* 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The testimony indicates that Mother has provided continual care for H.P. since his birth and that Father has been incarcerated for most of H.P.'s life.

The evidence showed that Father had not provided a stable home for H.P. in almost four years. Stability and permanence are paramount in the upbringing of children*. Id.* at 120. There is nothing in the record to indicate that Father had a specific plan to care for H.P. Moreover, Father has taken very little initiative in providing for H.P.'s emotional and financial needs. Not only has Mother provided care for H.P. since his infancy, she has demonstrated an ability to meet H.P.'s needs and provide him with a stable home environment.

Father's continued incarceration subjects H.P. to a life of uncertainty and instability. A parent's imprisonment is a factor that may be considered in determining a child's best interest. *In re R.P.*, No. 04-13-00313-CV, 2013 Tex. App. LEXIS 13119, at *9 (Tex. App.—San Antonio Oct. 23, 2013, no pet.) (mem. op.). Father testified that he was unable to provide any financial support since his incarceration and that he would remain in prison for at least the next three years, and possibly until 2029, when H.P. would be a teenager. Thus, it is likely that his limited interaction with H.P. would continue for the foreseeable future. *In re N.R.T.*, 338 S.W.3d at 677 (considering that appellants had "no meaningful contact with their daughter" when evaluating evidence relevant to best interest determination).

Father expressed a desire to be in his son's life and show him love and affection. While Father testified that he had sent H.P. a few birthday cards, Christmas cards, and drawings while incarcerated, he did not have any contact with H.P. in more than a year. Other than arranging for presents through the Angel Tree Foundation and babysitting by his niece, he had not provided financial support to H.P. From this evidence, the trial court could have reasonably concluded that Father has not been able, and he would not be able after being released from incarceration, to provide for and support H.P.'s physical and emotional needs.

Although there was evidence contrary to a finding that termination was in the child's best interest, there was strong evidence in favor of that finding. We conclude that any evidence the court could not have credited in favor of its best interest finding was not so significant as to make its finding unreasonable. *In re J.F.C.*, 96 S.W.3d at 266 (standard for factual sufficiency). The evidence is legally and factually sufficient to

support the trial court's finding that termination of Father's parental rights is in the best interest of H.P. Issue two is overruled.

Conclusion

The judgment of the trial court terminating Father's parental rights is affirmed.


Judy C. Parker
Justice