

# NUMBER 13-22-00004-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF M.L.H., A CHILD

### On appeal from the 347th District Court of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Aaron appeals the trial court's order terminating the parent-child relationship between he and his son Matthew, as requested by appellee, Amber.[1] By four issues, Aaron argues: (1) the evidence was legally and factually insufficient to terminate the parent-child relationship under predicate ground (A), *see* TEX. FAM. CODE ANN.

---

[1] We refer to the parents and children by aliases in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

§ 161.001(b)(1)(A); (2) the evidence was legally and factually insufficient to terminate the parent-child relationship under predicate ground (C), *see id.* § 161.001(b)(1)(C); (3) "[t]he trial court lacked the authority to terminate the parent-child relationship solely on what the trial court believes is in the child's best[ ]interest," *see id.* § 161.001(b)(2); and (4) the trial court erred when it ordered Matthew's surname be changed and Aaron be removed as Matthew's father from Matthew's birth certificate. We reverse and render in part, and reverse and remand in part.

## I. BACKGROUND

Matthew was born in May 2013 to Aaron and Amber. At the time, Aaron and Amber were in a relationship but acrimoniously separated in September 2014. According to Amber, she made several attempts to establish visits between Aaron and Matthew with limited success: Aaron visited Matthew five times in 2015, but he has not visited Matthew since May 2015, except for a fortuitous encounter at a mall in 2017 or 2018.[2]

In 2015, Amber filed a suit affecting the parent-child relationship (SAPCR) seeking to be appointed the sole managing conservator of Matthew, and Aaron to be ordered to pay child support. A default judgment was entered in May 2015, appointing Amber as Matthew's sole managing conservator and Aaron as possessory conservator. The order provided Aaron with "supervised visitation with [Matthew] at the discretion of [Amber]." Additionally, Aaron was ordered to pay child support and medical support.

In March 2017, the Office of the Attorney General (OAG) filed a motion to enforce and modify Aaron's support on Amber's behalf. The OAG alleged that Aaron was

---

[2] Amber testified that the encounter occurred in 2017, while Aaron testified it occurred in 2018.

$4,852.83 in arrears for child support, and $2,710.02 in arrears for medical support. Although the order on the motion to enforce and modify support is not in the record, the parties testified that, following the motion, Aaron paid off his arrears and made all payments. Amber acknowledged that, at the time of trial, Aaron had a credit for his support payments. Aaron agreed that he did not provide any support between 2014 and when the motion to enforce was filed in 2017.

In August 2020, Amber filed a petition to terminate the parent-child relationship between Aaron and Matthew, based on the predicate grounds that Aaron (1) "voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return"; and (2) "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A), (C). Amber also requested that Matthew's last name be changed to her surname and Aaron be removed as Matthew's father on Matthew's birth certificate. The trial court appointed an amicus attorney to represent Matthew's best interest.

During trial, Amber testified that Matthew has lived with her since birth. After the original SAPCR order, Amber offered Aaron a standing visit on Sundays at her parents' home, but after he failed to appear several times, she discontinued the offer. According to Amber, Aaron made little to no effort to visit Matthew since their separation in 2014, apart from some sporadic requests to visit. Amber testified that in 2018, she sent Aaron multiple requests to pay half of Matthew's uninsured medical expenses, but after never receiving responses, she eventually gave up on sending the requests. Amber told the trial

3

court that she believed it was in Matthew's best interest to terminate the parent-child relationship because she was "fully capable of taking care of him 100 percent as [she has] . . . since he was a baby." In support of her grounds for termination, Amber testified that "there was a period of about two and a half years where [Aaron] did not supply child support."

Aaron agreed that he had not visited Matthew since approximately 2014 or 2015. Aaron testified that in September 2015, he blocked Amber from phone and e-mail contact, citing "verbal abuse" from Amber. During the pendency of the termination suit, the parties arranged for Aaron and Matthew to engage in counseling to reintroduce Aaron into Matthew's life. According to Aaron, he attended one appointment with the selected counselor, but there was some miscommunication on the details of the process. Aaron believed Matthew would be at the appointment, but he was not, and the therapist "was confused with the reason why [they] were even meeting." Aaron testified that he did not notify Amber or the amicus attorney that he attended the appointment because he "[didn't] know the process for that." Aaron did not set up any subsequent appointments for counseling.

After the parties rested and made closing arguments, Matthew's amicus attorney stated she believed it would be detrimental to him for Aaron to suddenly be reintroduced into Matthew's life. Ultimately, the amicus attorney believed termination of the parent-child relationship was in Matthew's best interest. The trial court terminated the parent-child relationship, finding clear and convincing evidence to support predicate grounds (A) and (C), and that termination was in the child's best interest. *See id.* § 161.001(b)(1)(A), (C),

4

(b)(2). The trial court also appointed Amber sole managing conservator of Matthew, granted Amber's request to change his last name to her surname and to remove Aaron as Matthew's father on Matthew's birth certificate. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of Review

"[I]nvoluntary termination of parental rights involves fundamental constitutional rights" and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (quoting *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980)); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.); *see In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring) ("Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases."). Accordingly, termination proceedings must be strictly scrutinized. *In re K.M.L.*, 443 S.W.3d at 112.

A trial court may order termination of the parent-child relationship only if it finds by clear and convincing evidence that: (1) the parent committed an act or omission described in family code § 161.001(b)(1)(A)–(U) (predicate grounds); and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1), (2). The "clear and convincing" standard falls between the preponderance of the evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d at 847; *In re L.J.N.*, 329 S.W.3d at 671. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction

as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

Evidence is legally sufficient to support termination if a reasonable factfinder could form a firm belief or conviction that the finding was true. *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). In conducting a legal sufficiency review, we assume that the factfinder resolved disputed facts in favor of its finding if it was reasonable to do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *In re L.J.N.*, 329 S.W.3d at 671. We must also consider undisputed evidence, if any, that does not support the finding. *In re K.M.L.*, 443 S.W.3d at 113; *see In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) ("Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.").

Evidence is factually insufficient to support termination "if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction that the finding was true." *In re A.C.*, 560 S.W.3d at 631 (citing *In re J.F.C.*, 96 S.W.3d at 266). Under the factual sufficiency standard, we defer to the factfinder's determinations on the credibility of the witnesses "so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *see also In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("A standard that focuses on whether a reasonable jury could form a firm conviction or belief retains the deference an appellate court must have for the factfinder's role."). A reviewing court must affirm the termination if it finds sufficient evidence to support at least one predicate ground. *In re*

6

*A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (citing a previous version of TEX. FAM. CODE ANN. § 161.001(b)(1)).

"Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam). "Although we do not apply a different standard for construing briefs in termination appeals," *In re I.L.*, 508 S.W.3d 227, 242 (Tex. App.—San Antonio 2019, pet. dism'd), "[w]e should be particularly careful to avoid dismissing substantive arguments on overly technical procedural grounds when termination of parental rights is at issue." *In re L.M.I.*, 119 S.W.3d 707, 719 (Tex. 2003) (Owen, J., concurring and dissenting).

## B.    Applicable Law

Among the predicate grounds for termination are that the parent "voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return" or "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months." TEX. FAM. CODE ANN. § 161.001(b)(1)(A), (C). These grounds are commonly characterized as abandonment grounds. *See Jordan v. Dossey*, 325 S.W.3d 700, 726 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *In re J.A.M.R.*, 303 S.W.3d 422, 424 (Tex. App.—Dallas 2010, no pet.).

Under predicate ground (A), the child must be left with a person other than the child's parent. TEX. FAM. CODE ANN. § 161.001(b)(1)(A). Further, the parent whose rights are to be terminated must affirmatively express the intent not to return for the child. *In re J.A.M.R.*, 303 S.W.3d at 424 (holding that father leaving child with grandmother and

7

telling grandmother "he didn't want [the child]" constituted an express intent not to return); *Smith v. McLin*, 632 S.W.2d 390, 392 (Tex. App.—Austin 1982, writ ref'd n.r.e.) (concluding mother executing an affidavit of voluntary relinquishment was sufficient to express an intent not to return).

Under predicate ground (C), the "voluntariness" goes to whether the parent voluntarily left the child with another person. TEX. FAM. CODE ANN. § 161.001(b)(1)(C); s*ee In re J.G.S.*, 574 S.W.3d 101, 115–16 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citing *In re J.K.H.*, No. 06-09-00035-CV, 2009 WL 2948575, at *1, *3 (Tex. App.—Texarkana Sept. 16, 2009, no pet.) (mem. op.)). Unlike predicate grounds (A) and (B), ground (C) does not require that the parent left the child with somebody other than the child's parent. *Compare* TEX. FAM. CODE ANN. § 161.001(b)(1)(A), (B) *with* § 161.001(b)(1)(C). The six-month period that a parent remained away must be six consecutive months. *Id.* § 161.001(b)(1)(C); *Jordan*, 325 S.W.3d at 727.

Compliance with a court order giving one parent the right to designate the child's residence does not ordinarily constitute voluntarily leaving the child with another by the other parent. *See In re J.G.S.*, 574 S.W.3d at 116; *see also In re J.K.H.*, 2009 WL 2948575, at *3; *c.f. In re H.S.*, No. 05-16-00950-CV, 2016 WL 7163864, at *5 n.3 (Tex. App.—Dallas Dec. 6, 2016, no pet.) (mem. op.) (concluding that evidence was legally and factually sufficient to support trial court's finding that father voluntarily left child in grandmother's possession where evidence showed that father indicated his agreement with the court order).

Predicate ground (C) does not necessarily require the parent to personally support

the child; rather, the parent only needs to "make arrangements for the adequate support" of the child. *Holick*, 685 S.W.2d at 21; *Jordan*, 325 S.W.3d at 727–28 (affirming termination under predicate ground (C) where mom did not ensure the child was adequately supported and there was no evidence of an understanding that mom would not be sending support); *see also In re C.J.A.*, No. 13-16-00635-CV, 2017 WL 2200301, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 16, 2017, no pet.) (mem. op.) (holding that there must be evidence of an agreement for one parent to support the child on the other's behalf to demonstrate that a parent "made arrangements" for adequate support for the child); *In re A.R.*, No. 02-18-00311-CV, 2019 WL 1186963, at *4 (Tex. App.—Fort Worth Mar. 14, 2019, pet. denied) (mem. op.) (affirming termination under predicate ground (C) where "there [was] no evidence that when Father left the children with Mother, she was able to support them or expected to do so without his assistance"); *In re R.N.G.*, No. 11-02-00084-CV, 2002 WL 32344622, at *2 (Tex. App.—Eastland Dec. 12, 2002, no pet.) (mem. op.) (reversing termination under predicate ground (C) where mother left her children with their father pursuant to an agreed divorce decree).

Accordingly, a person seeking termination under predicate ground (C) must prove by clear and convincing evidence that the parent: (1) voluntarily left the child alone or with another; (2) remained away for a period of at least six consecutive months; and (3) neither personally supported nor arranged for the adequate support of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(C); *In re J.G.S.*, 574 S.W.3d at 115–16; *Jordan*, 325 S.W.3d at 727; *see also Holick*, 685 S.W.2d at 21.

III.    ANALYSIS

**A.    Predicate Grounds**

By his first two issues, Aaron argues that the evidence was legally and factually insufficient to support termination under predicate grounds (A) and (C), respectively. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A), (C). We address them in order.

The evidence in the record conclusively establishes that Aaron left Matthew with Amber, Matthew's mother. Amber does not present an argument in support of this ground on appeal. Indeed, Amber agreed that Matthew has always lived with her. Because predicate ground (A) requires the parent leave the child with somebody other than the child's parent, the evidence is legally insufficient to support termination under this ground. *See id.* § 161.001(b)(1)(A). Aaron's first issue is sustained.

To his second issue, Aaron primarily challenges the element of predicate ground (C) that he did not provide adequate support for Matthew. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(C); *Holick*, 685 S.W.2d at 21. Amber argues that Aaron has failed to challenge the sufficiency of the evidence that he voluntarily left Matthew in the possession of another. We disagree. Aaron specifically argues that he "could not have voluntarily left the child alone or in the possession of another because the court appointed [Amber] [as] [s]ole [m]anaging [c]onservator and [Aaron] [as] [p]ossessory [c]onservator of [Matthew] on May 29, 2015." Although this argument appears specifically in Aaron's challenge to predicate ground (A), voluntarily leaving the child with another is a common element between grounds (A) and (C). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A), (C). As we are directed to construe appellate briefs liberally in order to do justice and avoid finding

10

waiver, we conclude that Aaron's brief fairly raises the issue of voluntariness. *See Perry*, 272 S.W.3d at 587; *In re I.L.*, 580 S.W.3d at 242; *see also In re K.M.L.*, 443 S.W.3d at 112 (directing appellate courts to strictly scrutinize termination proceedings).

The May 2015 SAPCR order was entered as a default judgment, and there is no evidence that Aaron agreed to the order. *See In re J.G.S.*, 574 S.W.3d at 116; *see also In re J.K.H.*, 2009 WL 2948575, at *3. Because compliance with a court order does not constitute voluntarily leaving the child with another, Amber was required to show that the six-month period of inadequate support and remaining away pre-dated the May 2015 SAPCR order. *See In re J.G.S.*, 574 S.W.3d at 116 (requiring the six-month period pre-date the conservatorship order). Construing the evidence in a light most favorable to the judgment, we conclude Amber failed to meet her burden. The evidence and testimony show that after Aaron left in September 2014, he visited Matthew twice in January 2015 and once in February 2015. Accordingly, the evidence fails to show that Aaron remained away for six consecutive months during the period that he voluntarily left Matthew with Amber. *See id.*; *Jordan*, 325 S.W.3d at 727; *see also In re J.K.H.*, 2009 WL 2948575, at *3. The evidence is legally insufficient to prove each element of predicate ground (C) during the same consecutive six-month period. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(C). Aaron's second issue is sustained.

## B.    Best Interest

By his third issue, Aaron argues that "[t]he trial court lacked the authority to terminate the parent-child relationship solely on what the trial court believes is in the child's best-interest." Because we sustained Aaron's first two issues, no predicate

11

grounds on which termination could be upheld remain and we need not address best interest. *See* TEX. FAM. CODE ANN. § 161.001(b) (requiring both grounds for termination and that termination be in the child's best interest); TEX. R. APP. P. 47.4.

## C. Birth Certificate Change

By his fourth issue, Aaron challenges the trial court's order changing Matthew's surname and removing Aaron as Matthew's biological father on Matthew's birth certificate. Because there does not appear to be an independent basis for changing Matthew's surname and we are sustaining Aaron's first and second issues, we likewise sustain his fourth issue. *See Anderson v. Dainard*, 478 S.W.3d 147, 150 (Tex. App.— Houston [1st Dist.] 2015, no pet.) (applying an abuse of discretion standard to name changes of a child); *see also* TEX. FAM. CODE ANN. §§ 45.002 (requiring a petition to change the name of a child include the reason a name change is requested), 45.004(a)(1) (requiring the name change be in the child's best interest).

## IV. CONCLUSION

Ordinarily, when we find legally insufficient evidence to support a judgment, we render judgment to the contrary. See TEX. R. APP. P. 43.3. However, in cases involving involuntary termination of parental rights, if the trial court does not order termination of the parent-child relationship, § 161.205 of the family code requires that the trial court either (1) deny the petition for termination or (2) render any order in the best interest of the child. TEX. FAM. CODE ANN. § 161.205. "[A]ppellate courts are 'not in a position to determine whether simply to deny the petition for termination or render some other order in the best interest of the child.'" *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874–75

12

(Tex. App.—Houston [14th Dist.] 2010, no pet.) (quoting *In re C.M.C.*, 273 S.W.3d 862, 882 n.13 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). Further, the trial court did not make statutorily required findings to independently remove Aaron as Matthew's managing or possessory conservator. *See* TEX. FAM. CODE ANN. §§ 153.131, 153.191. We are therefore unable to render a judgment that disposes of all remaining issues in the case and must remand the case in part for further proceedings under § 161.205. *See* TEX. R. APP. P. 43.3(a); TEX. FAM. CODE ANN. § 161.205.

Accordingly, we reverse and render judgment in part denying termination of Aaron's parental rights and modification to Matthew's birth certificate, we reverse the trial court's appointment of Amber as Matthew's sole managing conservator, and we remand the case to the trial court for the limited purpose of rendering an order consistent with § 161.205.[3] *See* TEX. FAM. CODE ANN. § 161.205; *see also In re M.F.R.G.*, No. 13-21-00023-CV, 2021 WL 2149827, at *8 (Tex. App.—Corpus Christi–Edinburg May 27, 2021, no pet.).

CLARISSA SILVA
Justice

Delivered and filed on the
7th day of April, 2022.

---

[3] This order should not be construed as preventing the trial court from re-appointing Amber as Matthew's sole managing conservator.

13