**Opinion filed December 19, 2024**



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00185-CV

_____

## IN THE INTEREST OF J.R. AND J.R., CHILDREN

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10895-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father of J.R. and J.R.2.[1] *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2024). Only the father appealed. In a single issue, Appellant challenges the sufficiency of the evidence to support the trial court's findings as to subsection (O). We affirm in part and reverse and remand in part.

---

[1]We use initials to refer to the children and the children's family members. TEX. R. APP. P. 9.8(b).

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the children's removal under Chapter 262 for the abuse or neglect of the children. *See id.* § 161.001(b)(1)(O). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2). In his sole issue on appeal, Appellant challenges the trial court's findings under subsection (O) as being unsupported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor

of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and that the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

*Evidence Presented at Trial*[2]

The Department's involvement began on October 31, 2022, after J.R.2 tested positive for methamphetamine at birth. The mother admitted to recreational use of methamphetamine and was placed under twenty-four-hour supervision. One-year-old J.R. was drug tested on November 2, 2022, and his results were positive for cocaine, methamphetamine, and amphetamine. The mother identified Appellant as the children's father but did not have his contact information, and said that he was not involved in the children's lives.

---

[2]Because the mother did not appeal the trial court's termination order, we limit our rendition of the facts to those necessary for the resolution of Appellant's issue.

In November 2022, Department Investigator Kaitlyn Bristow called Appellant's last known phone number and sent a letter to his last known address. There was no evidence of additional contact attempts until Kristian Castro, the permanency case manager with 2INgage, learned that Appellant was transferred to the Taylor County Jail on June 26, 2023. Castro met with Appellant at the jail the following day, and paternity was ultimately established on November 29, 2023. Appellant remained detained awaiting trial for the second-degree felony offense of aggravated assault until he posted bond on June 10, 2024, two days before the final trial on the merits in this case and the trial court's decision to terminate his parental rights. *See* TEX. PENAL CODE ANN. § 22.02(b) (West Supp. 2024).

On August 28, 2023, the trial court approved Appellant's Family Plan of Service, through which Appellant was ordered to:

- maintain safe, stable, and appropriate housing with working utilities;

- attend and complete parenting classes, and submit a certificate of completion;

- participate in and complete anger management;

- submit to drug testing upon request, and "test negative for all substances";

- complete a drug and alcohol assessment, and follow all recommendations thereof;

- stay in contact with 2INgage and notify his permanency case manager of any changes in address, phone number, or "living situation" within three days;

- obtain and maintain a legal source of income, and provide proof thereof by paystub, W-2, or written letter from employer; and

- complete a psychological evaluation and follow all recommendations.

At the final hearing on June 12, Castro testified that Appellant completed anger management and a "parenting packet," as well as his psychological evaluation. The resulting recommendations from Appellant's psychological evaluation included

4

individual therapy and a psychiatric consultation, both of which "[h]e was unable to do . . . while he was incarcerated." Castro "work[ed] with the jail navigator to try to get [individual therapy] set up, but there was never any appointment." Appellant was also unable to submit to any random drug testing, maintain stable housing or a legal source of income, and did not complete his drug and alcohol assessment. Castro tried to arrange Appellant's drug and alcohol assessment in jail, but "was told that for [Appellant] to receive a substance abuse assessment, he would have to bond out and go straight into treatment."

On April 19, 2024, Appellant designated his wife, J.S., as a potential placement for the children. The Department conducted a home study in May 2024, and a written report therefrom was completed the day before the final hearing. According to the home study, J.S. "seem[ed] to have a genuine interest in seeking placement of [J.R.] and [J.R.2] in her home," "wants to provide [J.R.] and [J.R.2] with the love, nurture, support, and stability the children deserve," "appear[ed] to be financially stable," and had no criminal history or history with the Department. The Department's concerns included J.S.'s legal blindness, J.S.'s dependence on others for transportation, childcare while J.S. works part-time at a daycare, "[a]nd that [J.S.] doesn't have a bond with [the children] . . . [it] would have to be built from the beginning."

Castro testified that she learned of Appellant's release "just prior to the [final] hearing," and Appellant had not provided his updated living situation. Appellant did not appear for the final hearing. Castro opined that terminating Appellant's parental rights was in the best interest of the children because:

> [H]e's been incarcerated this -- the entirety of this case where he's been in contact with us, and he cannot prove while he's incarcerated that he can provide a safe and stable home, provide to meet their needs.

5

The Department's third and final witness was the children's foster mother, who testified that she did not believe it was in either child's best interest to return to any of their biological family members and stated that it was "fair to say" that "adoption is not on the table but it's also not off the table." The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(O) and found termination to be in the best interest of the children. This appeal followed.

*Analysis*

Pursuant to subsection (O), the Department had the burden to prove by clear and convincing evidence that Appellant failed to comply with the requirements for reunification set forth in his service plan. The statute provides:

> The [trial] court may order termination of the parent-child relationship if the [trial] court finds by clear and convincing evidence . . . that the parent has . . . failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Fam. § 161.001(b)(1)(O).

Because terminating the parent-child relationship "is 'the death penalty of civil cases,'" it "demands more than bureaucratic or mechanical box-checking." *In re R.J.G.*, 681 S.W.3d 370, 381 (Tex. 2023) (quoting *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021)). "Terminating the parent-child relationship for the parent's failure to comply with a court-ordered service plan necessarily requires a nuanced assessment of the parent's conduct and progress toward plan completion in light of the totality of the plan's requirements and overall goal." *Id.* at 381. "[T]ermination is not automatic or required, even if the Department properly proves a parent failed to comply with a specific plan provision." *Id.* at 379 (citing Fam. § 161.001(b)(1)(O) ("The court *may* order termination of the parent-child

relationship if the court finds by clear and convincing evidence . . . that the parent has . . . failed to comply." (emphasis added))).

"[T]he trial court bears the ultimate responsibility for determining whether that finding supports termination." *Id.* Therefore, it is only the violation of "material" requirements of a plan that justify termination under subsection (O). *Id.* (citing *J.F.C.*, 96 S.W.3d at 278–79 (affirming termination under subsection (O) based on parents' failure to comply with "material provisions of the trial court's orders")); *see also In re T.L.B.*, No. 01-21-00081-CV, 2021 WL 3501545, at *6 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, pet. denied) (mem. op.) (affirming termination under subsection (O) based on mother's failure to comply with "the material requirements of the plan"). "[I]f the noncompliance is trivial or immaterial in light of the plan's requirements overall, termination under (O) is not appropriate." *R.J.G.*, 681 S.W.3d at 379; *see also In re A.L.R.*, 646 S.W.3d 833, 837 (Tex. 2022) (a purpose of a written family service plan is to specifically establish the actions necessary for the parent to obtain the return of the child and facilitate the parent's ability to follow it).

Section 161.001(d) precludes termination for a parent's failure to comply with a court order under subsection (O) under certain circumstances:

> A [trial] court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of the evidence that:
>
> (1) the parent was unable to comply with specific provisions of the court order; and
>
> (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

FAM. § 161.001(d).

Appellant does not contest that he failed to complete the requirements of his service plan, including the drug and alcohol assessment, individual counseling, random drug testing, and proof of legal income. However, Appellant contends that he was not given a reasonable opportunity to comply with his service plan due to the failure on the part of the Department to make all necessary referrals for services. We construe Appellant's contention as an assertion that he proved the requirements of Section 161.001(d) by a preponderance of the evidence, specifically that he: (1) was unable to comply with the specific provisions of a court order; and (2) made a good faith effort to comply with the order, and the failure to comply is not attributable to any fault of his own. *See id.*; *In re Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) ("Courts must broadly construe issues to reach all core and substantive questions such that the merits of an appeal are addressed when reasonable possible to provide the party with a meaningful appeal.").

For the year preceding the final hearing, Appellant was detained in jail awaiting trial. Although Appellant had not provided his address following his release from jail—which was two days prior to the final hearing—he was within the allotted three-day period to provide that information. As such, at the time of the trial court's termination decision, the evidence did not permit the inference that Appellant failed to comply with that provision.

Furthermore, requiring Appellant to maintain safe and stable housing and legal employment while in jail would be setting him up for inevitable failure, which belies the purpose of the service plan. *See* FAM. § 263.102(b) (the purpose of a service plan "is to help [parents] provide [their] child with a safe environment within the reasonable period specified in the plan"). Moreover, Castro agreed that "[s]afe and stable housing doesn't have to be [Appellant's] own house." Under

subsection (Q),[3] for example, the incarcerated parent may arrange for another person to provide care for the child during the period of incarceration. *See, e.g., In re J.G.S.,* 574 S.W.3d 101, 118–19 (Tex. App.—Houston [1st Dist.] 2019, pet. denied); *see also In re D.D.,* 2020 WL 830988, at *2 (Tex. App.—Amarillo Feb. 19, 2020, pet. denied) ("[I]ncarceration, in and of itself, does not establish a parent's inability to care for a child."). Appellant provided J.S. as a potential caregiver, but nearly a month passed before "[t]he referral was done." The home evaluator "had to reschedule," so "the home study was not completed until [May 28]," and the report was finalized on June 11. J.S. was willing to care for the children, and the home study suggested that she could provide the children with a safe and stable home environment. Yet the absence of this important information prior to the final hearing was attributable to the Department, not Appellant.

Despite Appellant's noncompliance with all the provisions of his court-ordered service plan, the uncontroverted evidence demonstrated that he completed the services that were presented and available to him while he was in jail. On appeal, while the Department does not directly address subsection (O),[4] it commends Appellant's progress toward completing his service plan requirements while in jail:

> To Appellant's credit[,] he took advantage of programs that were available while he was in jail, but [Castro] testified that the programs they could offer him were limited; he could not[,] for example[,] participate in individual counseling.

---

[3]Section 161.001(b)(1)(Q) permits termination of parental rights on clear and convincing evidence that a parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." FAM. § 161.001(b)(1)(Q).

[4]In its brief, the Department does not address whether the evidence is sufficient to sustain the trial court's finding under subsection (O), and instead argues that termination is in the best interest of the children—a finding that Appellant does not contest on appeal. We nevertheless independently determine the merits of Appellant's issue.

On cross-examination, Appellant's trial counsel elicited testimony from Castro confirming Appellant's good faith effort to comply:

> [TRIAL COUNSEL]: You said that there was a list of things that [Appellant] could not complete on his service plan because simply they didn't allow it at the jail; is that accurate?
>
> [CASTRO]: Correct.
>
> [TRIAL COUNSEL]: But, the things that they did allow at the jail[,] he did complete?
>
> [CASTRO]: He did.
>
> [TRIAL COUNSEL]: Is there anything that was allowed at the jail for him to do that he did not complete?
>
> [CASTRO]: Not to my knowledge.

Castro's testimony thus established that Appellant made a good faith effort to comply with his service plan, and that his noncompliance was due to his pretrial detention. *See* FAM. § 161.001(d). The Department subsequently proffered that because Appellant "[was] responsible for . . . being incarcerated," he was nevertheless at fault for failing to comply with some of the provisions in his court-ordered service plan. But Appellant's trial counsel correctly pointed out that Appellant had not been convicted; he was in jail awaiting trial, and was therefore "innocent until proven guilty." *See* PENAL § 2.01 (West 2021) ("All persons are presumed to be innocent and . . . [t]he fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial."); TEX. CODE CRIM. PROC. ANN. art. 38.03 (West 1979) (Presumption of innocence).

And while a parent's incarceration or confinement is not a legal excuse for noncompliance with a service plan, it is a factor to consider in the "nuanced assessment of the parent's conduct and progress toward plan completion." *R.J.G.*,

10

681 S.W.3d at 381; *In re A.J.L.*, No. 04–14–00013–CV, 2014 WL 4723129, at *5 (Tex. App.—San Antonio Sept. 24, 2014, no pet.) (mem. op.).

It is well-settled that imprisonment alone is not a basis for terminating the parent-child relationship. *J.G.S.*, 574 S.W.3d at 118 ("[T]he mere showing of prolonged incarceration" does not establish a parent's inability to care for the child.); *see also Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (mere imprisonment does not "constitute engaging in conduct which endangers the emotional or physical well-being of a child."); *In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012) (rejecting proposition that any offense committed by a parent that could lead to imprisonment or confinement would establish endangerment to children); *In re Caballero*, 53 S.W.3d 391, 398 (Tex. App.—Amarillo 2001, pet. denied) (recognizing the "longstanding rule that termination of parental rights cannot be based on imprisonment alone"). "Otherwise, the termination of parental rights could become an additional punishment automatically imposed along with imprisonment for almost any crime." *J.G.S.*, 574 S.W.3d at 118 (quoting *In re E.S.S.*, 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.)).

The Twelfth Court of Appeals provided precedent when it evaluated a situation similar to Appellant's in which an incarcerated parent failed to strictly comply with his court-ordered service plan requirements:

> [The Department's caseworker] testified that [the father] complied with his service plan "as far as he [was] able to under the circumstance" . . . . We find it unreasonable for [the father] to be required to satisfy these provisions from prison, recognizing the impossibility of him being able to obtain housing, employment, or a psychological evaluation while still incarcerated.

*In re A.D.*, No. 12-17-00334-CV, 2018 WL 6191116, at *6 (Tex. App.—Tyler Nov. 28, 2018, no pet.) (mem. op.); *see also A.J.L.*, 2014 WL 4723129, at *5 (record did not support termination where, "up until the time Mother was incarcerated for a

violation of her probation, she was in compliance with her service plan," and nothing established that services were available during her incarceration). We further observe that Appellant's case differs from those in which we and our sister courts have upheld termination orders based on an incarcerated parent's failure to comply with the provisions of a court-ordered service plan. *See, e.g.*, *In re Z.R.E.B.*, No. 11-23-00233-CV, 2024 WL 968965, at *6 (Tex. App.—Eastland Mar. 7, 2024, no pet.) (mem. op.) (mother's incarceration for the first seven months while the case was pending did not excuse "her persistent disregard of other material requirements" after her release); *In re S.C.M.*, No. 01-22-00964-CV, 2023 WL 3873342, at *11 (Tex. App.—Houston [1st Dist.] June 8, 2023, pet. denied) (mem. op.) ("To the extent Father's failure to comply with the service plan could be explained in part due to his incarceration, the record supports the district court's finding that, in the months before his incarceration, Father had not attempted in good faith to comply with the order and that his failure to comply was attributable at least in part to his own fault."); *D.L.S. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-20-00369-CV, 2020 WL 7041564, at *4 (Tex. App.—Austin Nov. 30, 2020, no pet.) (mem. op.) (holding Father did not meet section 161.001(d) burden when he did not complete services in five months before incarceration); *W.C. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-19-00713-CV, 2020 WL 1281643, at *5 (Tex. App.—Austin Mar. 18, 2020, pet. denied) (mem. op.) (incarcerated parent failed to show good-faith attempt to comply with court-ordered services because he was also noncompliant prior to incarceration); *K.C. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-17-00184-CV, 2017 WL 3585255, at *2–3 (Tex. App.—Austin Aug. 17, 2017, no pet.) (mem. op.) (upholding termination under subsection (O) where incarcerated father completed none of his service plan requirements, even though there were services available to him during his incarceration).

Consequently, we conclude that the uncontroverted evidence supports but one conclusion: Appellant completed the services made available to him while he was confined in the county jail awaiting trial for the offense for which he was indicted, and his noncompliance was attributable to his pretrial confinement. Thus, while the evidence shows that he failed to complete some of the requirements of his service plan, the evidence also shows that (1) he was unable to comply with specific provisions of the court-ordered plan, (2) he made a good faith effort to comply, and (3) his failures to comply were not attributable to any fault by him. *See* FAM. § 161.001(d). We sustain Appellant's sole issue on appeal. This court's ruling does not alter the trial court's appointment of the Department as the children's managing conservator. *See In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007).

### *This Court's Ruling*

We reverse the trial court's termination order insofar as it terminated Appellant's parental rights to J.R. and J.R.2, and we affirm the order of the trial court in all other respects. We remand this cause to the trial court for further proceedings. Any proceedings on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4(c).


W. BRUCE WILLIAMS
JUSTICE


December 19, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.